2004-NMCA-057

92 P.3d 1263

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Ronald JACKSON, Defendant–Appellee.**

**No. 22,043.**

Court of Appeals of New Mexico.

March 1, 2004.

Certiorari Granted, No. 28,596, May 17, 2004.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Plaintiff–Appellant.

G. Greg Valdez, Las Cruces, NM, for Defendant–Appellee.

## OPINION

ROBINSON, Judge.

{1} The State appeals the trial court's pretrial dismissal, with prejudice, of the criminal charge against Defendant Ronald Jackson, arguing that the court committed an abuse of discretion when it sanctioned the Third Judicial District Attorney (the prosecution) for discovery delays committed by Doña Ana County (the County), the Doña Ana County Detention Center (DACDC), and the private civil attorney representing them in related civil litigation. The State argues that the trial court erred in dismissing the prosecution's case because (1) the trial court in essence punished the prosecution for the delaying tactics of the County and its agents and (2) there was no showing that Defendant suffered any prejudice. Because the record does not show that the dismissal was warranted, we reverse and remand the case for trial.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant was indicted by a grand jury in August 1999 for criminal sexual penetration, in violation of NMSA 1978, § 30–9–11(A), (D) (2001). The charge stemmed from the alleged rape of a female inmate at DACDC while Defendant was employed there as a detention officer. The prosecution timely filed a disclosure statement and list of witnesses. The prosecution also attempted unsuccessfully to obtain documents requested as discovery by Defendant that were in the possession of the County or DACDC. Discovery requests to these entities were being handled by a private law firm representing the County in separate civil liability cases arising from sexual assaults by DACDC detention officers. The same law firm also represented the New Mexico Association of Counties, which is the risk management insurer for Doña Ana County, and the Doña Ana County Board of County Commissioners.

{3} Defendant informed the trial court in January 2000 of problems with the County's compliance with discovery. During discovery, Defendant had requested that the prosecution provide him with copies of standard operating procedure manuals from the jail, the medical records of the victim, and a copy of an investigative report prepared by a private investigator under contract with the County's civil lawyer. At a hearing held on January 11, 2000, the prosecution told the trial court that although it had produced all pertinent documents in its possession, some of the requested documents and information were in the possession of the County, the County's attorneys, or DACDC which were outside the prosecution's control. The prosecution also commented that it had advised

Defendant to seek the trial court's guidance in getting the documents because the prosecution had been unable to obtain the requested documents from the County or DACDC.

{4} At a hearing on discovery matters held on February 15, 2000, the prosecution informed the trial court that the County was not providing the prosecution with copies of records the County had given the Defendant. The trial court then stated that both sides would get whatever discovery DACDC or any other County agency disclosed to Defendant. After another hearing on discovery with the parties and the private civil attorney representing the County on February 21, 2000, the trial court entered orders compelling disclosure by the County. These orders required disclosure by the County of the names of any private investigators or other individuals who were inquiring into the allegations of sexual assaults. The orders also compelled disclosure by DACDC and its employees of all information collected in the course of the internal investigation, the victim's jail file, and the personnel file of Defendant.

{5} In May 2000, Defendant issued subpoenas duces tecum to six witnesses, including the County's private attorney and DACDC's custodians of architectural, medical, housing, inmate, and payroll records. In response, the County's private attorney moved to quash the subpoenas and requested a sequestered hearing, contending, among other objections, that the investigative report was not subject to disclosure because it was confidential attorney work product prepared for the Association of Counties in anticipation of litigating their potential civil liability for the assaults at DACDC. Additionally, on May 12, 2000, the County's private attorney filed a motion for a protective order from the discovery demands for county employees. The trial court, by order from another discovery hearing on May 18, 2000, determined that the investigative report was privileged as confidential but should be provided to the parties with the proviso that they not disclose it to anyone else. In response to the court's action, the Association of Counties moved to stay the criminal proceedings pending the filing of an emergency petition for writ of

error with the Court of Appeals regarding attorney-client privilege and release of the investigator's report. We denied this writ on June 28, 2000, advised the Association that a petition for a writ of superintending control with the New Mexico Supreme Court would be the proper remedy, and transferred the matter to that Court. The Supreme Court denied the petition on July 5, 2000.

{6} On July 6, 2000, Defendant moved for dismissal for failure to produce relevant exculpatory evidence, "which is in the possession of the State or its political subdivisions or agencies." A hearing was held on Defendant's motion on July 14. After argument of counsel, the trial court determined that there was an insufficient record to support a ruling from the court and set an evidentiary hearing on the motion to dismiss. The trial court ordered that subpoenas duces tecum be issued to those entities that Defendant alleged had not provided discovery to Defendant or the prosecution, ordering them to appear before the court. On the day of the hearing, the County's private civil attorney filed a motion for recusal to bar the trial court from presiding over the hearing and filed another protective order for the County employees who had been served subpoenas for the hearing. The trial court rejected the motions as being untimely, and the hearing proceeded. Testimony was taken from the physician who treated the victim where she was an imate, an investigator for the Doña Ana County sheriff's office, a deputy district attorney, and the private civil attorney representing Doña Ana County, DACDC, and the Association of Counties. The civil attorney brought to the hearing several boxes of materials which he testified contained all the requested discovery. The trial court also ordered that the relevant mental health records of the victim be produced as confidential documents to the prosecution and Defendant by July 24, 2000. At the close of the hearing, the trial court, in response to argument by Defendant, refused to make a finding that the prosecution had been responsible for the delay in producing discovery. The trial court further observed that the failure of the government to timely disclose information germane to the case had prejudiced both the prosecution and Defendant in preparation of their cases. The

court explained that when it referred to the government, it did not mean the prosecution which he described as having acted diligently. Rather, the court stated, it meant the *County administration* and *DACDC* which the court concluded had been "less than diligent" and "less than candid" in disclosing materials and information.

{7} Defendant amended his motion to dismiss on July 26, 2000, and again requested dismissal for lack of disclosure of evidence. He attached a supplemental exhibit acknowledging the 759 new pages of discovery released by the County. The prosecution, in response to the motion, noted that the County had turned over 700 pages of documents that had been produced by the County's private attorney to Defendant on July 21, 2000, and that the County's private contractor for mental health services at DACDC had released its records for the victim on July 24, 2000.

{8} In the meantime, on July 24, 2000, the prosecution obtained from the Supreme Court an extension of time for the trial through November 29, 2000, and sought a continuance from the trial court. The trial court continued the trial to a later date, subsequently setting trial date for December 6, 2000, which was outside the extension date. Some two months after the discovery had been disclosed, in September, the trial court sent a letter to the prosecution and Defendant announcing its intention to dismiss the case in mid-October when he returned from leave. When an order had not issued by November, the prosecution moved for reassignment of the judge because the continued absence of the original judge would apparently prevent him from conducting either a motions hearing or a trial before the expiration of the extension on November 29, 2000.

{9} With a different judge presiding at a hearing on Defendant's motion to dismiss, the trial court issued an order of dismissal based on the letter written by the original trial judge. The prosecution moved for reconsideration "to determine whether prejudice as required by law can be established and whether any lesser sanction would achieve the desired results." The motion was heard in January 2001 before the original judge. At that hearing, the prosecution argued against attributing the discovery delay caused by the County to the prosecution, contending that the County's actions had been at cross-purposes with the prosecution's goal of prosecuting Defendant and that dismissal of the charges would serve to reward the County's obstructionist tactics. Moreover, the prosecution contended, Defendant had failed to show that he had been prejudiced by the delayed disclosure of discovery in July for a trial that had been extended until November. The trial court subsequently issued an order of dismissal reaffirming the earlier dismissal of the case. In its order of dismissal, the court faulted the actions of the "Government" for depriving Defendant of due process, hampering Defendant's ability to present a defense, and denying him a speedy trial. Further, the Court held that the Government was "100% responsible" for nondisclosure of discovery to Defendant and condemned the "egregious, arrogant, and callous actions of the Government." Although the trial court acknowledged in the order that the prosecution was "not particularly at fault in causing the delays," it concluded that dismissal of the case against Defendant was necessary to sanction a pattern of discovery violations by the County and DACDC. The State appealed the court's ruling.

## DISCUSSION

### Standard of Review

{10} Sanctions for noncompliance with discovery orders are discretionary with the trial court. *Mathis v. State*, 112 N.M. 744, 747, 819 P.2d 1302, 1305 (1991); *accord State v. Wilson*, 2001–NMCA–032, ¶ 39, 130 N.M. 319, 24 P.3d 351. A showing of noncompliance is insufficient to entitle a defendant to dismissal or other sanctions—the prejudice resulting from the violation must also be established. *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct.App. 1990); *accord State v. Griffin*, 108 N.M. 55, 58, 766 P.2d 315, 318 (Ct.App.1988). A reviewing court undertakes an "analysis of [a] case with the premise that dismissal is an extreme sanction to be used only in exceptional cases." *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. "[A]n abuse of discretion occurs when the ruling is clearly against the logic

and effect of the facts and circumstances in the case." *Mathis,* 112 N.M. at 747, 819 P.2d at 1305 (citation omitted).

### Disclosure by the State

■ {11} The State maintains that the trial court erred by dismissing the case, arguing that the record does not show any failure by the State to disclose the materials to which it had access. The State argues that the trial court's decision to sanction the State for the discovery delays caused by the vigorous resistance of the County and its agencies was an abuse of discretion and was based on a misapplication of the prosecution team concept articulated in *State v. Wisniewski,* 103 N.M. 430, 435, 708 P.2d 1031, 1036 (1985). During the motion hearing on July 14, the trial court had stated there was an effort by representatives of the government to withhold evidence that both the prosecution and Defendant were entitled to have. The court further observed that although the prosecution had acted in good faith and had no control over the discovery "in reality," it did "in theory." The trial court relied on *Wisniewski* for this proposition. We agree with the State that this interpretation of *Wisniewski* was erroneous.

{12} We note as a preliminary matter that although *Wisniewski* dealt with discovery using the analysis articulated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963), in this case the trial court did not find, and Defendant did not argue below or on appeal, that the discovery involved a *Brady* issue of suppression of exculpatory evidence by the prosecution. *See id.,* 373 U.S. at 85, 83 S.Ct. 1194. The Court in *Wisniewski* concluded that the obligation to disclose exculpatory evidence imposed by *Brady* applied not just to the prosecutor but to all members of the prosecution team as well. *Wisniewski,* 103 N.M. at 435, 708 P.2d at 1036; *accord Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (stating that the *Brady* disclosure requirement applies to others acting on the prosecutor's behalf in the case, including police officers). Information within the custody of police officers or other persons who are part of the prosecution team was presumed to be within the control of the

prosecution. *Wisniewski,* 103 N.M. at 435, 708 P.2d at 1036; *see also Commonwealth v. Daye,* 411 Mass. 719, 587 N.E.2d 194, 203 (1992) (defining discovery obligations of prosecution team).

■ {13} In New Mexico, the State has a duty to disclose "any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state[.]" Rule 5–501(A)(3) NMRA 2004. The State is ordinarily not charged with disclosure of material in the possession of government agencies that are not investigative arms of the prosecution and have not participated in the investigation of the case. *State v. Bustamante,* 91 N.M. 772, 774, 581 P.2d 460, 462 (Ct.App.1978) (holding, in a drug possession case, that the State was not required to produce a report regarding the feasibility of evaluating crime laboratories when the report was not in the possession, custody, or control of the State). "[T]he prosecutor does not have 'possession or control' of materials held by the court, by private firms, or by other, unrelated agencies." ABA Standards for Criminal Justice, *Discovery and Trial by Jury* § 11–2.1(a) (3d ed.1996).

■ {14} In this case, the documents being sought were in the possession of the County or DACDC. There is nothing in the record to indicate that the County or DACDC acted as an investigative arm of the prosecution or that they turned this material over to the prosecution until compelled to do so by the trial court. Neither of those entities was acting on behalf of the prosecution or reporting to the prosecution; rather, they were conducting an independent investigation of the assaults at DACDC. "[T]he government has no duty to produce evidence outside of its control[.]" *United States v. Hughes,* 211 F.3d 676, 688 (1st. Cir.2000). We hold that the prosecution did not violate Rule 5–501 when it failed to turn over material it neither possessed nor controlled. Because the prosecution was not in control of the material, it was error for the trial court to hold them responsible for the delay in producing the discovery.

### The Sanction of Dismissal

{15} Although we are sympathetic to the trial court's obvious frustration at the repeated discovery delays by the County, sanctioning the prosecution for those delays was against the logic and effect of the facts and circumstances of this case and thereby constituted an abuse of discretion. As we have noted, dismissal is an extreme sanction to be used only in exceptional cases. *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. "The sanction of dismissal punishes the public, not the prosecutor, and results in a windfall to the defendant." *State v. Theriault*, 590 So.2d 993, 996 (Fla.Dist. Ct. App. 1991). The sanction of dismissal is wasteful of judicial and investigative resources, and should be imposed only where no less severe sanction will remedy the violation." ABA Standards for Criminal Justice, *supra*, § 11-7.1(a).

{16} At the hearing on the motion for reconsideration, the trial court stated that the sanction of dismissal was necessary to "send a message to anybody that would be thinking about doing and acting in the same way in the future." However, the United States Supreme Court has stated that "deterrence is an inappropriate basis for reversal . . . where means more narrowly tailored to deter objectionable . . . conduct are available." *United States v. Hasting*, 461 U.S. 499, 506, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The Supreme Court held that the lower court had erred because the reversal failed to strike a balance between disciplining misconduct with society's interest in the prompt administration of justice and the welfare of the victims. *Id.* at 509, 103 S.Ct. 1974. Similarly, in *United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the Court stated that the sanction of dismissal went too far and would serve to "increase to an intolerable degree interference with the public interest in having the guilty brought to book."

{17} Although the trial court apparently believed that it had no power to sanction the County's behavior directly, we note that Rule 5-511(E) NMRA 2004 provides that a "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from

which the subpoena issued." Should there be any discovery problems upon remand, the trial court may avail itself of other appropriate sanctions to fulfill the goals of discovery.

### Prejudice to Defendant

{18} In the order dismissing the case, the trial court stated that Defendant had been denied due process because the delay in producing the discovery had hampered his ability to defend himself. Although the trial court denominated the statements in the order as findings, they are a mix of findings of fact and conclusions of law. We defer to the trial court with respect to the finding of facts so long as there is substantial evidence in the record to support the findings. *State v. Attaway*, 117 N.M. 141, 144–146, 870 P.2d 103, 106–108 (1994). The application of the law to those facts is a matter this court reviews de novo. *Id.*

{19} The order speaks of the nondisclosure of evidence even though the court found that while it still had some uncertainty about whether all the evidence had been disclosed, "it appears to have been." The question before the court, however, was one of delayed disclosure rather than nondisclosure. "When the issue is one of delayed disclosure rather than of nondisclosure, . . . the test is whether defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing . . . the defendant's case." *United States v. Ingraldi*, 793 F.2d 408, 411–12 (1st Cir. 1986)(citations omitted). The trial court described the delayed discovery as being material evidence, yet then stated that "[w]hether the evidence benefits the defense is irrelevant." However, this statement contradicts itself. Evidence is material and due process violated only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *State v. Chavez*, 116 N.M. 807, 811–13, 867 P.2d 1189, 1193–95 (Ct.App.1993). Moreover, there is nothing in the record that indicates the nature of the evidence contained in the documents disclosed by the County and DACDC; there has been no showing that the evidence was material. On appeal, Defendant asserts that he

was prejudiced by the delayed disclosure of evidence. In support of this claim, he refers to the testimony of the prosecution's investigator regarding the difficulties he had in obtaining documents from the County and DACDC. However, that testimony was given prior to the County's civil attorney having disclosed the requested discovery. Defendant also argues that with the passage of time the memory of witnesses is affected and the crime scene was changed with the remodeling of the detention center. We recognize that the delay in discovery may have resulted in difficulty for Defendant, but these consequences do not justify dismissal. Defendant has not met his burden of showing his defense was impaired by any delay in obtaining discovery. *See Bartlett,* 109 N.M. at 680, 789 P.2d at 628 (stating that "the defendant must establish prejudice resulting from the violation").

{20} The trial court also concluded in its order that Defendant had been denied a speedy trial. It may be that the court believed that a delay in providing discovery equated to a speedy trial violation. However, as the Supreme Court explained in *State v. Rojo,* 1999–NMSC–001, ¶ 51, 126 N.M. 438, 971 P.2d 829, the issue of delay in discovery is "analytically distinct from the issue of whether Defendant's constitutional right to a speedy trial was violated, and a ruling on one of these issues does not necessarily imply a ruling on the other." The court raised this issue sua sponte but provided no findings of fact or any basis for its conclusion in the dismissal order. "[A]n appropriate motion to protect constitutional speedy-trial rights [requires] the weighing of factors that are factually based, and fact-finding is a function of the district court." *Id.* ¶ 52 (citations and quotation marks omitted). Even if this issue were properly before us, there is no record for us to review.

## CONCLUSION

{21} We hold that the State was improperly sanctioned for discovery delays and that dismissal of Defendant's case would frustrate the ends of justice. Because the dismissal was premised on an erroneous conclusion of law, and because there is no basis in the record for dismissal, we reverse the trial court's dismissal of the rape charge against Defendant. The case is remanded for trial.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.