**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-092**

**Filing Date: August 13, 2009**

**Docket No. 27,544**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**MARTY ORTIZ,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellant

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}** The State appeals from the district court's order dismissing the charges against Defendant with prejudice, in part due to the State's failure to comply with a discovery order under Rule 5-501(A)(3) NMRA. The court determined that Defendant made a threshold showing that the discovery requested was potentially material to the defense and ordered the State to identify whether any such material evidence existed. The State chose not to comply

1

in any manner with the district court's order, and the court dismissed the case with prejudice. We conclude the court did not abuse its discretion in doing so.

**FACTS**

**{2}**   Defendant Marty Ortiz was indicted in April 2006 for driving while intoxicated (DWI) and three related charges.  At a hearing on June 19, 2006, the prosecutor stated that on the night in question a person overdosed on heroin at a local convenience store, that police officers were looking for that particular person traveling in a gold or tan Honda or Acura, and that it turned out the person they were looking for was a passenger in Defendant's car.  The prosecutor further stated that Officer John Boerth was in a location on the south side of the city where he witnessed a car weaving and driving recklessly.  Officer Boerth activated his emergency equipment in order to stop the vehicle driven by Defendant. When Officer Boerth "spotted . . . [D]efendant, he didn't know if that was the car involved in the heroin overdose or not."

**{3}**   Later in June 2006, Defendant filed a motion to suppress all evidence and a request for an inspection of the videotape of the stop.  In the motion, Defendant set out Officer Boerth's grand jury testimony "that . . . Defendant's driving behavior, the reason he stopped the car, consisted of the multiple infractions of the car failing to maintain [its] lane, multiple infractions of the car striking the curb finally riding on the curb before the officer pulled the car over."  This motion also stated that Officer Boerth testified that "he was looking for . . . Defendant's car because someone was performing 'CPR' on one of the passengers."  In addition, the motion stated that the videotape of the stop indicated that Defendant had "complete and lawful control of the vehicle and even used his turn signal to properly pull the vehicle over for the officer," thus indicating that Defendant was not engaged in any driving behavior that would give the officer reasonable suspicion on which to stop him.  Defendant averred in the motion that the search and stop were "pretextual and illegal," and he asserted that all of the evidence stemming from the stop should be suppressed.

**{4}**   Defendant also filed a motion to compel specific discovery.  This motion sought "any and all audio recordings and written logs including but not limited to dispatch records and phone records of any kind which are relevant to the stop and arrest . . . including any communications between [Officer] Boerth and any dispatcher, police officers, or any other persons whatsoever."  Defendant asserted in this motion that the videotape of the stop started at 19:17:45 and ended at 19:50:23, but that the time 19:18:52 to 19:24:27 was missing, "leaving a 'gap' in the [videotape] of six (6) minutes and thirty-five (35) seconds." Defendant requested "copies and access to evidence of all oral, electronic[,] telephonic[,] or written communications made between Officer . . . Boerth and any other person during this incident."

**{5}**   In response to Defendant's motions the State asserted that there was no video footage missing.  The State explained that the video camera taping between 19:17:45 and 19:18:52

2

was not related to Defendant's stop but showed only that the officer was patrolling in the rain and that the video footage involving Defendant began at 19:24:27.

**{6}** At a pretrial conference in July 2006, Defendant reiterated his argument that the videotape was missing six minutes of footage and that the videotape produced by the State did not support the explanation that Officer Boerth gave for pulling him over. Defendant challenged the stop based on the incomplete videotape and moved to suppress all the evidence stemming from the stop. Defendant requested dispatch logs and communications between the officer and dispatch, and he also requested the production of any communications, including personal cell phone calls, that Officer Boerth had with anyone.

**{7}** At the same pretrial conference, the prosecutor again discussed what she had learned about the officer's activity that evening. She stated that the videotape showed that the officer was driving on patrol through the rain on an unrelated charge. She also stated that the reason for the six-minute gap in the videotape was because the camera only turned on when the emergency equipment was engaged. And she "strongly" objected to the discovery of Officer Boerth's personal cell phone records because they "would not be discoverable in this case." The discovery and suppression issues were not resolved at this pretrial conference, and no order was issued as a result.

**{8}** The cell phone records issue was discussed at a hearing on August 17, 2006. Defense counsel stated that the officer had testified before the grand jury that he was looking for someone traveling in Defendant's car because they had a CPR situation and suggested that this was an emergency and was the reason why the officer's lights were activated. Defense counsel complained that he received dispatch records for every officer involved except Officer Boerth, and he again requested records of any communications by Officer Boerth, including personal or departmental cell phone records.

**{9}** The prosecutor argued, again based on what she had learned from Officer Boerth, that he was patrolling on Cerrillos Road in Santa Fe, New Mexico and "was looking for a car that fit . . . [D]efendant's [vehicle's] description, however, he never found that car." She stated that when the videotape "comes on again[] is when . . . [D]efendant is being pulled over." She also stated that at the time Officer Boerth stopped Defendant he was not dispatched to the location, and it was the prosecutor's understanding that this was why the officer was not part of the dispatch records.

**{10}** The prosecutor argued that the first part of the videotape showed that the officer was patrolling on Cerrillos Road, in the rain, having nothing to do with Defendant; that the next time the camera and the emergency equipment were turned on was when the officer pulled Defendant over; and that there was no six-minute gap because officers do not have their equipment on constantly. The prosecutor asserted that Defendant was not entitled to private communications on an officer's private cell phone number. She wanted Defendant to "brief that subject, because there is no way that the State is giving out that information."

**{11}** In response, defense counsel explained that Defendant was only asking for records of communications the officer had within the relevant six-minute period. Counsel argued

3

that dispatch records showed there was a drug case going on around the time of the six-minute gap and argued that Defendant had a right to explore whether a stop that started on a suspicion of drugs turned into a DWI case. Counsel contended that the officer did not have an expectation of privacy of his cell phone records while on duty, on patrol, in a marked unit, during an emergency or arrest situation. The prosecutor indicated that an evidentiary hearing was necessary to resolve factual issues, and she again asserted that the defense did not have any right to access the officer's personal cell phone records.

{12}    At the close of the foregoing arguments at the August 17 hearing, the court determined that the issue Defendant raised was "a relevant issue" and that Defendant had a right to access the requested information even without knowing whether any such information existed. The court orally granted Defendant's motion to compel specific discovery, but stated that (1) the phone records requested were for a very finite period of time; (2) if there was no recording of a phone conversation, it would be appropriate to produce the phone record; (3) if there existed a defense to the discovery of the records, such as the disclosure of a confidential informant, the State could file a motion to prohibit the discovery; and (4) if there were personal matters irrelevant to the case, the State could file a motion for an in camera review.

{13}    On August 29, 2006, the State filed an amended response to Defendant's motion to compel specific discovery. The State asserted that Officer Boerth "has a reasonable expectation of privacy in his personal cell phone records." The State cited "U.S. Constitution, Amendments I, IV[,] and XIV; N.M. Constitution, Art. [II], Sections [4], [10,] and [18]." The State also asserted that Officer Boerth did "not consent to the disclosure of his personal cell phone records" and that "[h]e has a constitutionally protected privacy interest in his personal property." In addition, the State argued that "[p]ursuant to the Electronic[] Communications Privacy Act outlined in 18 U.S.C.A. §§ 2510, 2701[,] and 2703(2)(c) [(2006)], the party seeking disclosure of personal cell phone records must make a showing that there are reasonable grounds to believe that the contents of the records are relevant and material to an ongoing criminal investigation." The State further argued that Defendant failed to make a proper showing of either relevancy or materiality and that merely requesting the phone records did not satisfy the requirements for obtaining such records. Attached to the motion was an affidavit of Officer Boerth asserting a constitutional right of a protected privacy interest in his personal cell phone records, citing the same constitutional provisions cited by the State in its amended response and stating that he did not receive personal notice of the court's order and did not consent to the order.

{14}    Also on August 29, Defendant filed a motion to dismiss for prosecutorial misconduct and speedy trial, and in the alternative, to suppress evidence or dismiss pursuant to Rule 5-501(H) NMRA (failure to comply with discovery) and Rule 5-505(B) NMRA (failure to comply with continuing duty to disclose). Defendant argued that despite being ordered at the hearing to produce the officer's cell phone records, the State had not yet produced them and that the prosecutor had indicated she was not required to produce any discovery until a written order was signed by the court. In Defendant's view, the State had no intention whatsoever of producing the records.

4

**{15}** The following day, August 30, 2006, the district court entered a written order on the motion to compel specific discovery. The order referred to the August 2006 hearing and stated that the court was "fully informed regarding the issue of discovery." The order required the State to "produce all tangible records or recordings of any and all communications, including but not limited to any cell phone records or communications, made by or to Officer . . . Boerth during the [six] minute and [thirty-five] second period that the [v]ideo unit in his patrol vehicle was not engaged regarding his patrol and stop of . . . Defendant." On September 18, 2006, the State filed a petition for issuance of a writ of mandamus and superintending control in the New Mexico Supreme Court in Cause No. 30,017, *State ex rel. Valdez v. Pfeffer*. The Supreme Court stayed the proceedings on September 21, 2006, but on November 17, 2006, denied the State's request for writ relief.

**{16}** On November 20, 2006, Defendant filed his third motion to dismiss for prosecutorial misconduct and speedy trial. His grounds were simply and briefly stated: (1) no discovery, (2) sixteen months in county jail, and (3) the writ was denied. The State did not respond to this motion.

**{17}** On December 8, 2006, the State filed a motion in which it asserted that "Officer Boerth did not provide his personal cell phone records to the State for any prosecutorial action and therefore [the records were] not in the possession of the State." The State further asserted that it could not compel Officer Boerth to give up his personal cell phone records and that the government, including the court, "[cannot] override an individual's privacy interests."

**{18}** Defendant filed a request in January 2007 for a setting on all outstanding motions to dismiss and suppress, and the court set a hearing for February 21, 2007. At the hearing, the court asked the State why it had not filed a response to Defendant's third motion to dismiss for prosecutorial misconduct and speedy trial. The State responded that it did not think there was anything to respond to given that there was nothing substantive and no cited authority to respond to.

**{19}** After the State's response, the court stated that the police are "an arm of the State," and the court found insulting the State's implication that Defendant stated no articulable reason for the requested discovery after the court had determined there was a reason for requiring production. The court further stated that its order "was a very limited [o]rder in this instance for a very limited time period." The court reiterated its suggestion that it review the records in camera.

**{20}** In conclusion, the court found "the actions of the State [to be] in bad faith, arguably intentionally preventing this trial from going forward." Further, the court found that the State had flaunted the court's order for simple discovery and that Defendant was prejudiced.

**{21}** The court entered a written order on February 21, 2007, granting Defendant's motion to dismiss with prejudice. The charges against Defendant were dismissed on three grounds: (1) the State was still in violation of the court's discovery order, (2) the State failed

5

to respond to Defendant's third motion to dismiss for prosecutorial misconduct and speedy trial, and (3) Defendant had been in custody for over nineteen months.

**{22}** The State raises six issues on appeal: (1) the district court abused its discretion when it dismissed the case based on non-disclosure of communications and records that were not subject to disclosure under Rule 5-501, (2) the order of dismissal was erroneous under New Mexico law governing discovery sanctions, (3) the district court failed to give the officer notice and an opportunity to be heard before depriving him of his private rights to his personal cell phone records, (4) public employees possess a constitutional right to privacy in their personal telephone records and communications, (5) the district court's order unreasonably demanded that the State violate federal law and expose itself to civil liability, and (6) the Supreme Court's unexplained denial of the petition for an extraordinary writ was not res judicata or law of the case.

**{23}** We conclude that the district court did not err in dismissing the case because of the State's failure to comply with the court's discovery order. We then briefly address the State's remaining four points and hold that they do not require reversal.

**DISCUSSION**

**I.  The State's First Two Points on Appeal**

**{24}** The State's first two points on appeal attack the district court's discovery order and dismissal. A district court's decisions with regard to discovery are reviewed for an abuse of discretion. *State v. Dominguez*, 2007-NMSC-060, ¶ 25, 142 N.M. 811, 171 P.3d 750; *State v. Jackson*, 2004-NMCA-057, ¶ 10, 135 N.M. 689, 92 P.3d 1263 ("Sanctions for noncompliance with discovery orders are discretionary with the trial court.").

**The Discovery Order**

**{25}** Rule 5-501(A)(3) mandates that "the [S]tate shall disclose or make available to the defendant . . . any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody[,] or control of the [S]tate, and which are material to the preparation of the defense."

**{26}** We proceed on the assumption that it can reasonably be inferred from the statements of the prosecutor and the affidavit of the officer, as well as from the intensity of the State's opposition to discovery, that the officer in fact had a personal cell phone with him at the time in question, although there exists no evidence or even a statement by the prosecutor or the officer that the officer in fact had a cell phone. On appeal, the State has an insurmountable hurdle to overcome for success in its attack on the district court's discovery order. In this case, Defendant established a prima facie case under Rule 5-501 for discovery. The State, however, did not adequately develop or otherwise preserve any position or argument in the district court on the elements of control, materiality, and prejudice to refute Defendant's prima facie case for discovery.

6

**{27}** Defendant showed that the cell phone records were in the control of the State because they were in the possession of the officer during the time in question. Indeed, the court agreed, finding that the officer was an arm of the State. And the State in its brief in chief acknowledges that the court "ruled that the [officer] was 'an arm of the State' and that therefore his private telephone records were 'within the possession, custody[,] or control of the [S]tate,' making them subject to disclosure under Rule 5-501(A)(3)." *See State v. Wisniewski*, 103 N.M. 430, 435, 708 P.2d 1031, 1036 (1985) (holding that the requirement of disclosing evidence favorable to the defense "applies to all members of the prosecution team, including police authorities" (citation omitted)); *State v. Jackson*, 2004-NMCA-057, ¶¶ 12-14, 135 N.M. 689, 92 P.3d 1263.

**{28}** Defendant also showed that the cell phone records were potentially material to his defense, given that they might contain information indicating why the officer stopped Defendant. The court in fact determined that the records were potentially material. That the records may not, after in camera or other inspection, have turned out to contain information that would assist in Defendant's defense was not a basis on which, at the discovery stage, to assert that the records were not material to preparation of the defense. A discovery right does not require a defendant to know or show in advance that the records will actually contain helpful information. A defendant need only show circumstances that reasonably indicate that records may contain information material to the preparation of the defense. *See United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993) (explaining that under Federal Rule of Criminal Procedure 16(a), from which Rule 5-501 was derived, the "materiality standard . . . is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" (internal quotation marks and citations omitted); Rule 5-501 comm. cmt. (stating that the rule was derived from Rule 16(a) of the Federal Rules of Criminal Procedure).

**{29}** Defendant also showed that denial of the discovery was prejudicial, in that were the information material to his defense of unlawful stop, but not produced, he would be denied the opportunity to prove an unlawful stop and obtain suppression relief. The court also determined that Defendant was prejudiced. Deprived of the opportunity to discover whether the records contained information material to the preparation of his defense, discovery he was entitled to pursue under Rule 5-501(A)(3), the district court did not abuse its discretion in determining that Defendant was prejudiced.

**{30}** The focus of the State's positions and arguments in the district court was that the State did not have possession of the cell phone records, the officer had a reasonable expectation of privacy in his phone records, and it was Defendant's responsibility to subpoena the records from the officer and give the officer an opportunity to resist production of the records. The State was not going to comply in any respect with the court's discovery order, which included the State's apparent refusal to even attempt to ascertain whether any record existed and to report that information to the court or to have the records viewed in camera for materiality.

**{31}** The State failed to preserve for argument on appeal that the State lacked control over the officer's phone. To the extent there may have been undeveloped facts relating to control, it was the State's burden to present those facts to dispel control. Not only did the State fail to present such facts, the State did not even request a hearing for that purpose. Furthermore, as to materiality, while the State asserted that Defendant did not make a proper showing of materiality, this argument was never adequately developed through example or discussion of why the records were not potentially material to the defense. Therefore, the State failed to preserve any argument relating to materiality. The State also failed to argue that Defendant would not be prejudiced if discovery were refused. Thus, that argument, too, was not preserved for appeal. As a result, we will not entertain the State's arguments on appeal in regard to control, materiality, or prejudice.

**{32}** A party cannot "throw out legal theories without connecting them to any elements and any factual support for the elements." *Lovato v. Crawford & Co.*, 2003-NMCA-088, ¶ 30, 134 N.M. 108, 73 P.3d 246. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). We will not consider issues not raised in the district court unless the issues involve matters of jurisdictional or fundamental error. *See In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431. Nor will we review an undeveloped and unclear argument on appeal. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{33}** The State attempts to overcome any duty to produce records that are material to the defense and within its control by arguing various manifestations of a view to which it steadfastly adhered in the district court and now on appeal, namely, that given Officer Boerth's privacy right, the only way that Defendant was entitled, if at all, to the records and information was to subpoena the officer's cell phone records. Thus, the State's answer to the standoff is that the court could have resolved the matter by simply telling Defendant to subpoena the officer's records and communications and that the court should have told Defendant to subpoena the records before "leap[ing] immediately to the extreme sanction of dismissing charges supported by probable cause." In addition, the State asserts that, at the very least, the district court should have required defense counsel to interview the officer to find out if the requested records or communications even existed.

**{34}** We reject the State's various arguments. We are not convinced that, under the circumstances in this case, the burden and duty of the State under Rule 5-501(A)(3) are to be dispensed with based on a view that, because an on-duty police officer's personal cell phone may somehow be involved, the only way a defendant can determine if the cell phone records will assist in the preparation of his defense is to subpoena the officer's cell phone records and/or interview the arresting officer.

**Propriety of Dismissal with Prejudice**

**{35}** Here we review whether the district court's sanction of dismissal with prejudice for noncompliance with the discovery order was erroneous. The parties treat the dismissal as

8

one under Rule 5-505. The State asserts that on appeal it is not asking that a lesser sanction be imposed, only that the ultimate sanction of dismissal was not authorized under Rule 5-505. Rule 5-505(B) provides, "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court . . . may enter such other order as it deems appropriate under the circumstances." "The remedy for violating a discovery order is within the discretion of the trial court." *State v. Montoya*, 116 N.M. 297, 304, 861 P.2d 978, 985 (Ct. App. 1993); *see also Jackson*, 2004-NMCA-057, ¶ 10 ("Sanctions for noncompliance with discovery orders are discretionary with the trial court."). We will not disturb the district court's ruling absent an abuse of discretion. *Montoya*, 116 N.M. at 304, 861 P.2d at 985. As the appellant, it is the State's burden to establish an abuse of discretion. *State v. Layne*, 2008-NMCA-103, ¶ 10, 144 N.M. 574, 189 P.3d 707.

**{36}** The critical issue is whether the dismissal with prejudice was an abuse of discretion after the State's refusal to comply with orders that the State determine the existence of records within the State's control and produce the records or make them available for in camera review, while also permitting the State to seek protection from production based on lack of relevance or confidentiality concerns. The State has never shown that it made any attempt to review any cell phone records. The State has never shown that it took any step to ascertain whether any relevant phone records existed. The State has never shown that it even asked Officer Boerth about what information, if any, the cell phone itself contained related to the six-minute time period. One can reasonably conclude from the court record that the State never asked to examine or attempted to examine the cell phone. The State has steadfastly indicated it would not make that attempt and that Defendant would have to subpoena the officer's cell phone records.

**{37}** The issue is not about whether the State was required to or could physically seize and turn over the officer's private communications as the State on appeal has characterized what the court ordered. This approach ignores the prosecution-team concept and the State's Rule 5-501(A)(3) disclosure duty as to evidence within its control. The State was not as it contends flatly ordered to seize and physically hand over the officer's private cell phone records to Defendant. The court orally conditioned its discovery order on several important considerations. In the early as well as in the later proceedings, the court offered in camera review. The court took careful measures to ensure the officer's privacy, offering not only in camera review but inviting the State to file an appropriate motion to protect the documents if that were justified. *See Layne*, 2008-NMCA-103, ¶ 10 (reiterating that where the district court's written order does not include limitations made in an oral ruling, the party is still required to follow the limitations imposed); *see also State v. Gonzales*, 1996-NMCA-026, ¶¶ 17, 20, 121 N.M. 421, 912 P.2d 297 (stating that the proper procedure for determining materiality is in camera review); *State v. Ramos*, 115 N.M. 718, 722, 858 P.2d 94, 98 (Ct. App. 1993) (stating that "trial courts must exercise their discretion carefully to balance the legitimate interests of all concerned" in connection with material that is of a sensitive and pursuant nature and to "allow victims to keep their private affairs private"). The State never questioned whether the court abandoned its oral limitations on production when it entered its written order. In no way can the court's action be considered a firm and direct command

9

that the State simply obtain the records and hand them over to Defendant, as the State contends.

**{38}** Although the prosecutor's arguments against discovery changed as the issue lingered on, the State's core position never changed. The very essence of that position was that the State was not entitled and had no obligation to inquire about, much less review, the officer's cell phone records. It is also important to note that the State has never indicated whether police officers were permitted to use personal cell phones for police-related investigation activity while on duty, or whether Officer Boerth used his cell phone for police-related business while on duty. It appears that the State has approached the issue here as one of policy—a firm stand that the State will not become in any way involved in what information may exist in an on-duty police officer's cell phone during a criminal investigation.

**{39}** The district court found that "the actions of the State [were] in bad faith, arguably intentionally preventing this trial from going forward." The court also found that the State flaunted the court's order for what the court deemed to be simple discovery. The court further found that this conduct prejudiced Defendant. *See Jackson*, 2004-NMCA-057, ¶ 10 ("A showing of noncompliance is insufficient to entitle a defendant to dismissal or other sanctions—the prejudice resulting from the violation must also be established."). The court record shows that the State's actions constituted conscious, intentional, and unjustifiable rejection of and refusal to comply with the district court's order. "[U]pon failure to obey a discovery order, the court may enter such order as is appropriate under the circumstances." *Layne*, 2008-NMCA-103, ¶ 13 (alteration in original) (internal quotation marks and citation omitted). We believe that the record supports the district court's findings, and we hold that the court did not abuse its discretion in dismissing the case with prejudice under Rule 5-505. Therefore, we will not disturb the district court's decision. *Montoya*, 116 N.M. at 304, 861 P.2d at 985.

## II. The State's Third, Fourth, and Fifth Points

**{40}** The State's third, fourth, and fifth points are:

> [The court] recognized that [its] order implicated the [officer's] "private rights" and "private interests," but did not give the [officer] notice and an opportunity to be heard before depriving him of those private rights.
> There is no room to doubt that public employees possess a constitutional right to privacy in their private telephone records and communications.
>
> [The court's] order unreasonably demanded that the State violate federal law and expose itself to civil liability.

The third point is based on statements the district court apparently made in documents filed in the writ proceeding before the Supreme Court. The State asserts that the court recognized Officer Boerth's private interests and rights were implicated by its ruling. The State argues that because the court recognized those interests and rights, the officer, being a stranger to the proceedings, had a right to notice and an opportunity to be heard, but the court failed to

provide those procedural rights and Defendant failed to subpoena the officer's cell phone records. The court's error, the State claims, was that despite its recognition of the officer's privacy rights, the court premised its discovery order on the court's view that the officer had no such privacy interests and rights and thus no right to notice and opportunity to be heard. To the extent the State considers this a point of error separate from its first point, the State does not indicate where this issue was raised in the district court after the petition for the writ was denied or show how it was preserved. We therefore do not consider it. *See State v. Lente*, 2005-NMCA-111, ¶ 11, 138 N.M. 312, 119 P.3d 737 ("On appeal, the reviewing court will not consider issues that were not raised in the trial court unless the issues involve matters of fundamental rights or fundamental error.").

**{41}** The fourth and fifth points were not adequately developed by the State in the district court for effective review. We note that although at the August 17, 2006, hearing the prosecutor indicated that an evidentiary hearing was necessary to resolve factual issues relating to the discovery request, the State does not indicate that the prosecutor later sought such a hearing, and the State has not, on appeal, asserted error or prejudice in regard to lack of an evidentiary hearing that would have developed circumstances favorable to the position it now takes. There is no indication in the court record or in the briefs that the State placed before the court or that the court considered facts relating, for example, to departmental policy on use of cell phones and any reasonable expectation of privacy of the officer. *See State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768 (holding that preservation for review requires a fair ruling or decision by the district court in order to provide the lower court with an opportunity to correct any mistake, gives the opposing party an opportunity to demonstrate why the district court should rule in its favor, and creates a record that enables this Court to make informed decisions). The circumstances underlying the issues the State raises on appeal should have been, but were not, specifically and fully developed through evidence, argument, and authority. Because the State failed to satisfy its obligation to develop the circumstances and to specifically and fully argue the points, we will not address those points on appeal. *See State v. Casillas*, 2009-NMCA-034, ¶ 12, 145 N.M. 783, 205 P.3d 830 (refusing to consider the appellant's argument on appeal because it was not fully developed below).

**{42}** Further, logically extended, the State's position would result in the following untenable consequence: even if an officer is permitted to use his cell phone to obtain information that he believes creates a lawful basis for a stop, even if the personal cell phone records of the on-duty officer who is investigating a possible crime actually contain information relevant and material to the lawful basis for an investigative stop, and even if the information is helpful and critical to the preparation of the defense, the State would not even have to ask to review the cell phone records, much less attempt to obtain and then disclose them. We will not tie into a position that leads to what appears to us to be an unreasonable if not absurd result.

**{43}** For its constitutional arguments, the State cites federal case law involving a government employee's reasonable expectation of privacy in communications. None of the cases the State cites involves an on-duty police officer's use of a cell phone for public purposes in connection with an investigation of possible criminal activity. Nor do any of the

11

cases have any relation to a criminal proceeding instituted by the State, giving rise to a defendant's right to a fair trial, and involving discovery of records or communications that were material to the preparation of the defense and within the control of the State. The present case does not involve a secret recording of an officer's communication, an investigatory search into an officer's malfeasance by searching records of a service provider without the officer's consent, or a search of unreasonable scope. In fact, the present case does not involve a search at all, nor does it involve a risk of violation of some protected individual interest in avoiding disclosure of personal matters.

**{44}** The district court in the present case minimized all risk of any constitutional violation by offering in camera inspection and suggesting that protective motions could be filed. The court bent over backwards to work with the prosecution on the discovery issue. The State refused to cooperate, standing firm on its policy position that it had no duty, that the issue was solely between Defendant and the officer, and Defendant had the full burden to subpoena the officer's cell phone records to bring the matter before the court. The court's frustration was reasonable.

**{45}** The fifth point essentially centers on the State's argument that Officer Boerth would not produce the records, and the court's order therefore placed the State in an untenable position. However, contrary to the State's implications, Officer Boerth did not state in his affidavit that he refused to allow the State to review the records. The State did not show in the district court that the officer refused to allow the State to review the records. The court wanted to know from the State whether the cell phone records were relevant or confidential, and gave the State every opportunity to ascertain that information and present it to the court. The court offered in camera review. The State refused to take any step in any regard.

**{46}** In addition, the State's position here suffers from the same defect as to which the fourth point suffers resulting in the same absurd result as discussed earlier in this opinion. Furthermore, the State's position flies in the face of the embedded prosecution-team doctrine, in the face of the prosecution's clear duty to investigate and to turn over evidence favorable to Defendant's case, in the face of a clear, mandatory criminal disclosure rule, and in the face of the fair-trial and due-process rights of a defendant. We see no basis on which the State is permitted to assert an officer's privacy right to excuse the State from investigating the relevance and materiality to the defense of an on-duty, investigating officer's cell phone records within the State's control. We see no basis on which the State is excused from producing documents, in camera or otherwise, or acting to protect production based on relevancy or confidentiality, where, as here, the defense makes a rational, logical, threshold showing of control, materiality, and prejudice. None of the State's privacy arguments are persuasive, and none of its cited authorities relating to privacy are on point, analogous, or persuasive.

**{47}** The State asserts that 18 U.S.C. § 2703 in the federal Electronic Communications Privacy Act applies. Section 2703 pertains to records of a provider of service, not a customer. The State wholly fails to specifically explain how any aspect of that Act is applicable to the circumstances here. There exists no indication in the court record that the

court ordered the prosecution to obtain records or information from a service provider. We hold that the federal Act has no application here.

## III.    The State's Sixth and Final Point

**{48}**    The State's final point is that our Supreme Court's unexplained denial of the petition for a writ of mandamus was not res judicata or law of the case. The State asserts that remarks the district court made strongly suggest that it improperly considered the Supreme Court's unexplained denial of the State's petition to be a ruling on the merits. The State argues that the court's accusation of bad faith against the prosecutor indicated its belief that the prosecutor was under a duty to comply with the Supreme Court's implied ruling.

**{49}**    The State correctly asserts that the Supreme Court's denial of the petition was not a decision on the merits. *See* Rule 12-504(C)(2) NMRA (providing that the Court may deny a petition without hearing if it "is without merit, concerns a matter more properly reviewable by appeal, or seeks relief prematurely"); *State v. House*, 1999-NMSC-014, ¶ 25, 127 N.M. 151, 978 P.2d 967 (stating that denial of petition for a writ of superintending control "does not necessarily reflect upon the merits"). However, we do not agree with the State's interpretation of the district court's comments. And even were we to agree, we would still uphold the court's dismissal on other grounds. *See State v. Danek*, 117 N.M. 471, 480, 872 P.2d 889, 898 (Ct. App. 1993) (indicating that if it is apparent from the record that the district court dismissed on one of several alternative grounds, then affirmance is proper on appeal if any of those grounds was proper); *cf. State v. Ruiz*, 2007-NMCA-014, ¶ 38, 141 N.M. 53, 150 P.3d 1003 (filed 2006) (stating that as a general rule, we will uphold the decision of a district court if it is right for any reason).

## CONCLUSION

**{50}**    We affirm the district court's order of dismissal with prejudice.

**{51}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**LINDA M. VANZI, Judge**

Topic Index for *State v. Ortiz,* No. 27,544

AE                              APPEAL AND ERROR

13

AE-PJ                 Prejudicial Error

**CA**                **CRIMINAL PROCEDURE**
CA-DD                 Deposition and Discovery
CA-MP                 Misconduct by Prosecutor
CA-PO                 Peace Officer
CA-SA                 Sanctions

**EV**                **EVIDENCE**
EV-DC                 Discovery
EV-SU                 Suppression of Evidence

**RE**                **REMEDIES**
RE-WM                 Writ of Mandamus