BUSTAMANTE, Judge (specially concurring in part and dissenting in part). {37} I concur in the result of the majority opinion with regard to SV. I dissent from the majority’s resolution of the issue concerning Dr. Ornelas. Were I in the majority as author, I would resolve the case in an opinion constructed as follows: {38} “The district court set a discovery deadline requiring that all witness interviews in the case against Curtis Harper (Defendant) be completed by Friday, January 19, 2007. An interview with the alleged victim, SV, was scheduled for the day of the deadline, but she was not under subpoena and she failed to appear. An interview with the State’s expert witness, Dr. Ornelas, was never scheduled ostensibly because the State had not been provided with assurances that her expert witness fees would be paid. The Monday following the missed deadline the State submitted a motion for an extension of time. Defendant responded with a motion opposing the extension and a motion to exclude SV and Dr. Ornelas as witnesses. Defendant’s motion to exclude was ultimately granted, and the State appeals. {39} We first consider whether the district court abused its discretion in excluding SV given that the State scheduled her interview on the discovery deadline and that approximately five months remained before the trial date. Our second inquiry is whether the State’s expert was properly excluded where the defense failed to affirm that it would pay witness fees, the prosecution refused to schedule an interview until the defense affirmed it would pay the fees, and the district court did not intervene. We reverse and remand concluding that exclusion of the witnesses under these circumstances was an abuse of discretion. BACKGROUND {40} In November 2004 Defendant was indicted and arrested on fifteen counts of criminal sexual penetration of a minor in the first degree. Defendant remained incarcerated for nearly three years while awaiting trial. Defendant’s trial date was scheduled multiple times through extensions granted under Rule 5-604(C) and (D) NMRA. Each request cited as a basis for the extensions, among other things, the need to finish discovery, “specifically any necessary [pretrial] interviews.” The last extension occurred on February 28, 2007, and resulted in a trial deadline of June 24,2007. {41} In December 2006 the district court imposed a deadline of January 19, 2007, to complete all witness interviews in preparation for trial. At the time, trial was set for February 19. The State offered to set up the interview with SV at any time, but stated that it would not schedule an interview with Dr. Ornelas until payment of her expert witness fees was affirmed by the defense. An interview was scheduled with SV on the Friday, January 19 deadline, but she failed to appear. An interview with Dr. Ornelas was never scheduled. {42} In its motion for an extension of time to complete witness interviews, the State explained that SV was not subpoenaed because there was no reason to believe that she would not attend. The State also explained that it scheduled the interview with her on the deadline because it was the only day she was available, and because it wanted to give Defendant time to consider a plea bargain. The State asserted that it had a policy of withdrawing any potential plea bargain once a defendant interviewed a minor victim. With respect to Dr. Ornelas, the State explained that it never set up the interview because the defense failed to confirm that it would pay her expert witness fees. {43} Defendant opposed the State’s request for an extension of time and requested that both witnesses be excluded. The district court denied the State’s requested extension and granted Defendant’s motion to exclude based on the fact that the interviews had not been completed by the deadline. In support of its ruling, the court found that SV had not exhibited a willingness to cooperate. With regard to Dr. Ornelas, the district court found that she was a “combination fact/expert witness” and that she could not “refuse an interview to the defense based upon pay.” The court also found that the defense’s inability to interview these witnesses by the deadline prevented the defense from providing effective assistance, performing due diligence, and from adequately confronting the witnesses. {44} The district court also had a motion to dismiss before it. The court postponed ruling on the motion to dismiss pending the outcome of this appeal. However, the State conceded that dismissal would be proper if this Court were to affirm the exclusion of its two key witnesses, or that it would not continue to prosecute. STANDARD OF REVIEW {45} “Sanctions for violations of discovery orders are discretionary with the trial court.” State v. Bartlett, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct.App.1990). “[A]n abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances in the case.” State v. Jackson, 2004-NMCA-057, ¶ 10, 135 N.M. 689, 92 P.3d 1263 (alteration in original) (internal quotation marks and citation omitted). Exclusion of SV and Dr. Ornelas would effectively result in dismissal of the case against Defendant. Dismissal is a severe sanction appropriate only in the rarest of cases. Bartlett, 109 N.M. at 682, 789 P.2d at 630. {46} The district court ruled that as a result of the missed deadline, defense counsel was prevented from providing effective assistance, performing due diligence, and adequately confronting witnesses. The district court’s ruling presents a mixed question of fact and law. Jackson, 2004-NMCA-057, ¶ 18, 135 N.M. 689, 92 P.3d 1263. We defer to the trial court with respect to the finding of facts so long as they are supported by substantial evidence, but application of the law to those facts is reviewed de novo. Id. DISCUSSION {47} “[U]pon failure to obey a discovery order, the court may enter such order as is appropriate under the circumstances.” State v. Layne, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707 (alteration in original) (internal quotation marks and citation omitted). However, “[a] defendant is not entitled to a dismissal or other sanctions upon a mere showing of violation of a discovery order.” Bartlett, 109 N.M. at 680, 789 P.2d at 628. Our Supreme Court has held in the analogous area of exclusion of evidence that whether or not a sanction should be imposed “depends in large measure upon the extent of the Government’s culpability ... weighed against the amount of prejudice to the defense.” State v. Chouinard, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981) (internal quotation marks and citation omitted). In order to justify exclusion, a “defendant must establish prejudice resulting from the violation.” Bartlett, 109 N.M. at 680, 789 P.2d at 628. “The prejudice must be more than speculative.” State v. McDaniel, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. {48} Exclusion is proper where there is culpability based on an intentional refusal to comply with an order, and where such culpable conduct is highly prejudicial to the opposing party. In Layne, for example, the state refused to disclose information about its confidential informant in violation of a discovery order. 2008-NMCA-103, ¶ 3, 144 N.M. 574, 189 P.3d 707. As a result, the district court excluded the informant as a witness. Id. ¶ 1. Under those facts, exclusion was proper given the state’s wilful refusal to comply with the order, and because the non-disclosure prevented the defense from discovering potentially impeaching evidence. Id. ¶ 13. We reasoned that impeachment is crucial to effective cross-examination, and cross-examination is part of the constitutional right to confront witnesses. Id. Thus, exclusion was proper based on the state’s intentional refusal and the resulting prejudice to the defense. {49} Exclusion is normally improper where a party may be charged with some amount of culpability but the resulting prejudice is minimal. In Bartlett, the district court dismissed a case against a defendant where the state failed to produce a video tape of an interview with one of its witnesses. 109 N.M. at 680, 789 P.2d at 628. The circumstances leading to loss of the tape were murky and the trial court in Bartlett did not determine the degree of fault attributable to the state for the loss. For purposes of analysis, we presumed “some degree of deliberate fault on the part of the state was present.” Id. at 681, 789 P.2d at 629. Nonetheless, we concluded that dismissal was improper because the defense was able to vigorously raise and pursue defenses relating to the video tape even without it being produced, and thus any prejudice was minimal. Id. at 682, 789 P.2d at 630. {50} In cases of delayed disclosure, prejudice is shown if the delay prevented a party from preparing for trial. In Jackson, the district court dismissed a case against a criminal defendant based on delays in discovery. 2004-NMCA-057, ¶ 18, 135 N.M. 689, 92 P.3d 1263. There, we noted the difference between cases dealing with delayed disclosure versus those dealing with nondisclosure and stated that, for the prior, “the test is whether [the] defendant’s counsel was prevented by the delay from using the ... material effectively in preparing ... the defendant’s case.” Id. ¶ 19 (second alteration in original) (internal quotation marks and citation omitted). Exclusion of SV was Improper {51} Here, any culpability on the part of the State with respect to the failed SV interview is minimal. The State at no time refused to make SV available for an interview with the defense, and it at least attempted to comply with the court’s discovery order by scheduling an interview with SV before the deadline. After SV failed to appear, the State expressed a willingness to reschedule, this time under subpoena. Any culpability that may be allocated to the State is far less than that which justified exclusion in Layne. {52} Furthermore, any prejudice to Defendant was minimal given that the time frame for trial deadline had been extended. The State submitted its request for an extension of the discovery deadline on January 22, the hearing on exclusion occurred on March 29, and the ultimate trial deadline was extended to June 24. Several months remained before the trial deadline to reschedule the interview and prepare for trial. Other than the delay, and absent a refusal to disclose by the State, nothing suggests that defense counsel was prevented from effectively preparing for a June trial deadline. Jackson, 2004-NMCA-057, ¶ 19, 135 N.M. 689, 92 P.3d 1263. {53} At the hearing, defense counsel pointed to Defendant’s incarceration as the number one sign of prejudice. However, exclusion — or effective dismissal — was a severe sanction where there were other options for addressing the issue of prolonged incarceration, including the one later taken by the court: reevaluating terms of release, and release on bond. {54} Defense counsel also pointed out that the witness’ memory may have faded, and that the delay was thus prejudicial. However, absent any evidence in support of this assertion, the statement itself is insufficient to show prejudice. See McDaniel, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701 (stating that prejudice must be more than speculative); see also Jackson, 2004-NMCA-057, ¶ 19, 135 N.M. 689, 92 P.3d 1263 (holding that an allegation that memories fade with passage of time did not justify dismissal in a delayed discovery case). Furthermore, SV had been interviewed on a prior occasion, thus making it possible to compare any changes or discrepancies in her testimony against her prior statements. Therefore, even allocating some level of culpability to the State, any resulting prejudice was insufficient to warrant exclusion. Exclusion of Dr. Ornelas was Improper {55} The State and defense counsel share culpability for the failed interview with Dr. Ornelas. The State openly refused to schedule an interview with Dr. Ornelas until such time that the defense affirmed payment. Such an open refusal to comply with the court’s discovery order is clearly analogous to Layne, where the State refused to provide information on its informant. 2008-NMCA-103, ¶ 3, 144 N.M. 574, 189 P.3d 707. {56} However, we cannot overlook the fact that, even after having notice of the State’s position, the defense posed no objection to payment of Dr. Ornelas’ fees until after the deadline expired. Unlike the defense in Layne, defense counsel in this ease had options available to compel discovery within the court’s deadline. For example, defense counsel acknowledged he could have subpoenaed the witness, but declined based on his understanding that scheduling was an obligation of the State. This understanding does not excuse defense counsel’s failure to act given the State’s position that it would not schedule anything absent agreement as to the expert witness fees. {57} Defense counsel could have requested that the Public Defender Department pay Dr. Ornelas’ expert witness fees. An indigent defendant is entitled to obtain funding for expert witness fees. Brown, 2006-NMSC-023, ¶ 31, 139 N.M. 466, 134 P.3d 753. Access to these funds is part of an indigent defendant’s Sixth Amendment right to “the basic tools of an adequate defense.” Id. ¶¶ 16, 25. As a contract public defender, defense counsel in this case could have applied for such funding for Dr. Ornelas’ fees. Id. ¶ 28. Whether the defense would have received funding is, of course, unknown. But as we understand the record, the defense never requested it. {58} This ease highlights the advantages and disadvantages attached to the practice in the Second Judicial District — and perhaps others — of having the district attorney provide and yet control access to the State’s witnesses. The practice can be convenient for the defense and utilitarian for the State when it operates smoothly. When it does not, however, the practice creates difficulties for all parties, but particularly for the trial courts when they are called on to sort out the cause of the failure — which it must do in order to decide what its response should be. When the parties know they are at loggerheads — -as they were with regard to Dr. Ornelas — the practice cannot be relied upon by anyone. The defense can and should resort to the formal discovery methods provided for in the Rules of Criminal Procedure. Resort to the rules here would have created an opportunity for all parties and Dr. Ornelas to openly litigate the question of fees for experts in these circumstances, including whether, when, and how they were to be paid. This Court would then have a proper record to assess rather than the vague morass of he said/she said assertions we are dealing with. {59} Finally, the district court should have considered its role in securing Dr. Ornelas’ expert witness fees. Where funding has not been secured or made available to pay expert witness fees for indigent defendants, the court as the “ultimate guardians of an indigent defendant’s ... rights,” may take action to obtain the necessary funding. Id. ¶23. The district court was put on notice that Dr. Ornelas’ expert witness fee was an issue at the time it ordered the discovery deadline. However, it took no action to fulfill its obligation of protecting Defendant’s rights by addressing the funding issue before resorting to exclusion of the witness. {60} We agree with the district court that the State could not refuse to schedule an interview with its expert based on payment. However, we cannot agree that exclusion was justified where the defense failed to raise the issue of funding before the discovery deadline and apparently failed to seek funding, and where the court itself failed to intervene. Exclusion of a witness which will ultimately result in dismissal “punishes the public, not the prosecutor, and results in a windfall to the defendant.” Jackson, 2004-NMCA-057, ¶ 15, 135 N.M. 689, 92 P.3d 1263 (internal quotation marks and citation omitted). Therefore, exclusion of Dr. Ornelas based on the State’s conduct was an abuse of discretion when viewed in light of all the surrounding circumstances. {61} With respect to whether or not Defendant was prejudiced by the missed interview deadline, we apply the same considerations from our analysis of the exclusion of SV. Defendant potentially had access to expert witness funds through the Public Defender Department, the district court could have intervened to help secure such funds, the trial deadline had been extended to June, and there were other less severe options to address Defendant’s prolonged incarceration. Again, other than the mere occurrence of delay, and given that the defense could have attempted to compel the interview itself or obtain funding, pursuant to Jackson, no actual evidence suggests that defense counsel was prevented from effectively preparing for a June trial deadline. For these reasons, we conclude that any prejudice to Defendant resulting from the missed deadline was minimal and did not justify exclusion.”