2003-NMCA-135

80 P.3d 476

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Gustin TALAMANTE, Defendant–Appellant.**

**No. 23,081.**

Court of Appeals of New Mexico.

Sept. 22, 2003.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, for Appellee.

John B. Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

VIGIL, J.

{1} This is a speedy trial case under the Sixth Amendment to the U.S. Constitution in which we are required to determine the applicable length of delay where there are successive indictments charging identical offenses. The first indictment was filed on March 25, 1999, and dismissed without prejudice on May 5, 2000. That same day, a second indictment was returned, charging the same offenses. On October 23, 2001, Defendant conditionally pleaded no contest to reduced charges, reserving his right to appeal the denial of his motion to dismiss the indictment on speedy trial grounds. We hold that from the time the first indictment was filed on March 25, 1999, until Defendant conditionally pled no contest on October 23, 2001, (a period of 942 days or 31.40 months), Defendant was an "accused" for purposes of the right to a speedy trial under the Sixth Amendment to the U.S. Constitution. We reverse the orders of the trial court denying Defendant's motion to dismiss the indictment.

{2} Two different judges presided over this case. Judge Jewell was the first. After hearing the evidence and considering legal arguments of the parties, Judge Jewell concluded that since Defendant was not formally arrested when the first indictment was filed, and he was released on his own recognizance subject to conditions, Defendant's speedy trial rights did not commence until the second indictment was returned on May 5, 2000. Judge Jewell further concluded that from May 5, 2000, the length of the delay was not presumptively prejudicial, and while the reasons for the delay weighed against the State, they did not heavily weigh against the State. Judge Jewell found that Defendant always asserted his speedy trial rights, but concluded he suffered no prejudice. Accordingly, Judge Jewell denied the motion to dismiss in an order filed on March 1, 2001. Judge Sitterly was assigned to the case the same day Judge Jewell's order was filed, on March

1, 2001. Defendant subsequently filed a second motion to dismiss on May 22, 2001. After conducting a second evidentiary hearing and receiving written arguments from the parties, Judge Sitterly denied the motion on June 28, 2001. She did not reexamine Judge Jewell's order and concluded that the additional delay after March 1, 2001, due to a reassignment of judges, was not sufficient prejudice to violate Defendant's constitutional right to a speedy trial.

## ANALYSIS

{3} The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. We weigh four factors in analyzing Defendant's claim that the State violated his Sixth Amendment right to a speedy trial: (1) length of the delay, (2) reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Lujan,* 2003–NMCA–087, ¶ 4, 134 N.M. 24, 71 P.3d 1286. On appeal, we independently evaluate the four factors " 'to ensure that no [speedy trial] violation has occurred' " while giving deference to the trial court's findings. *Id.* (quoting *State v. Plouse,* 2003–NMCA–048, ¶ 34, 133 N.M. 495, 64 P.3d 522).

### 1. Length of the Delay

{4} On March 25, 1999, the State filed the first indictment. The right to a speedy trial attached at that time. *Lujan,* 2003–NMCA–087, ¶ 8, 134 N.M. 24, 71 P.3d 1286 (stating the right to a speedy trial attaches when the defendant becomes the "accused" which occurs with a formal indictment or information or arrest). Defendant was arraigned on April 12, 1999, which meant that the deadline to commence trial under the Rules of Criminal Procedure for the District Courts was October 12, 1999. Rule 5–604(B)(1) NMRA 2003 (requiring commencement of trial within six months after arraignment in the district court). However, trial did not commence at that time because the State obtained two extensions of time to com-

mence trial, one from the trial court, and one from the Supreme Court. Rule 5–604(C) and (D) (stating that district court may extend time to commence trial for up to three months and Supreme Court may further extend time to commence trial). The new deadline to begin trial was July 12, 2000.

{5} On February 21, 2000, the Supreme Court decided *State v. Ulibarri*, 2000–NMSC–007, ¶ 1, 128 N.M. 686, 997 P.2d 818, holding that in grand jury proceedings the prosecutor is required to instruct the grand jury on the record, of the essential elements of offenses it is considering. On May 5, 2000, the trial court dismissed the first indictment without prejudice because *Ulibarri* was not complied with. That same day, a second indictment was returned charging Defendant with identical crimes to those originally charged in the first indictment. A notice of re-indictment and judicial reassignment was filed in the trial court stating that the second indictment was a "refiling of charges from an original Indictment in this cause[,]" and that "any conditions of release currently in effect in the original case shall remain the conditions of release in the new cause number, until further order of the trial court." The notice also assigned the case to Judge Jewell, the same judge who presided over the first indictment.

{6} The State subsequently filed several more Rule 5–604 petitions in the Supreme Court to extend the time to commence trial and one motion to reconsider, resulting in a trial deadline of September 27, 2001. The last trial setting of September 4, 2001, was vacated by agreement of the parties. However, the case could not be reset for trial until October 23, 2001. Defendant subsequently filed a Rule 5–604 petition in the Supreme Court seeking an extension of time until October 27, 2001, to commence trial, advising it that the parties had agreed to count the period from September 4, 2001, until October 23, 2001, as delay attributable to Defendant. The petition was granted.

{7} On October 23, 2001, Defendant conditionally pleaded no contest to reduced charges, reserving his right to appeal the denial of his motion to dismiss the indictment on speedy trial grounds.

{8} Defendant was clearly an "accused" from March 25, 1999, until October 23, 2001, when he conditionally pleaded no contest. During this continuous period of time, a formal indictment was pending against him. The fact that the first indictment was dismissed is of no consequence because the second indictment was returned on the same day charging the identical offenses set forth in the first indictment. *See Klopfer v. North Carolina*, 386 U.S. 213, 215, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (stating that where prosecutor filed nolle prosequi but could activate charges at any time and have case restored for trial without further order of the court, constitutional right to speedy trial was violated); *United States v. MacDonald*, 456 U.S. 1, 8 n. 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (characterizing *Klopfer* as a situation where charges against the defendant were never dismissed or discharged in any real sense so speedy trial guarantee continued to apply). Here, the charges against Defendant were never dismissed or discharged in any real sense, thus his speedy trial rights continued to apply.

{9} In addition, numerous factors support the conclusion that both the State and the trial court treated the two indictments as the same case: (1) the first indictment was dismissed, and the second indictment was returned on the same day with the conditions of release on the first indictment intact; (2) both indictments charge the same offenses; (3) both indictments were assigned to the same judge; (4) the same prosecutor handled both indictments; (5) orders filed under the first indictment to interview witnesses were deemed applicable to the second indictment; (6) the prosecutor treated both indictments as a single case for purposes of Rule 5–604 because the second indictment was returned on May 5, 2000, and the Rule 5–604 petition filed on July 11, 2000, was unnecessary unless both indictments were considered as the same case; (7) the first Rule 5–604 petition filed by the State in the Supreme Court after the second indictment recites the extensions and deadlines obtained under the first indictment as the deadline to commence trial; (8) the Rule 5–604 petitions filed in the Supreme Court by the State after

the second indictment are all filed under the case numbers of both indictments; and (9) the clerk of the trial court filed all the Rule 5–604 pleadings under the case numbers of both indictments.

■ {10} Furthermore, New Mexico courts look past the form to the substance when considering the effects of a prosecutorial dismissal and refiling of criminal charges. *See State ex rel. Delgado v. Stanley,* 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972) (holding that courts may look past the form to the substance to determine operative date that time to commence trial begins running); *State v. Ware,* 115 N.M. 339, 341–42, 850 P.2d 1042, 1044–45 (Ct.App.1993) (noting precedent holding that six-month rule does not necessarily restart upon prosecutorial nolle prosequi being filed); *State v. Lucero,* 108 N.M. 548, 550, 775 P.2d 750, 752 (Ct.App. 1989) (stating that under six-month rule in Metropolitan Court, where complaint is dismissed and subsequent complaint is filed which contains no new charges or is not based on new facts or information regarding the prior charges, original complaint is not superseded in counting the deadline to commence trial); *State v. Ericksen,* 94 N.M. 128, 130–31, 607 P.2d 666, 668–69 (Ct.App.1980) (affirming dismissal of indictment where the trial court found that prosecutorial dismissal and refiling of charges was utilized as a device to circumvent time to commence trial rules). We hold that Defendant was an "accused" for purposes of the right to a speedy trial under the Sixth Amendment to the U.S. Constitution for a period of 942 days or 31.40 months.

■ {11} The parties dispute whether this is a complex case or one of intermediate complexity. However, it is unnecessary for us to resolve that argument in this case. "The State bears the primary responsibility of bringing cases to trial within a reasonable time." *State v. LeFebre,* 2001–NMCA–009, ¶ 9, 130 N.M. 130, 19 P.3d 825. In New Mexico, a delay of twelve months in a case of intermediate complexity is presumptively prejudicial, and a delay of fifteen months in a complex case is presumptively prejudicial. *Id.* ¶ 7. Therefore, however this case is categorized, there is presumed prejudice. Con-

sequently, the burden shifts to the State to show that the *Barker* factors do not support dismissal. *Lujan,* 2003–NMCA–087, ¶ 5, 134 N.M. 24, 71 P.3d 1286; *Salandre v. State,* 111 N.M. 422, 427, 806 P.2d 562, 567 (1991). We now turn our attention to those factors.

### 2. Reasons for the Delay

{12} The primary cause of the delay in this case is attributable to the State for its failure to produce witnesses for interviews despite court orders to do so. On April 29, 1999, Defendant filed a motion to compel the State to produce all of its witnesses for interviews, and on August 9, 1999, he filed a motion to compel the State to provide discovery and produce its witnesses for interviews. Judge Jewell initially ordered that the State's witnesses be produced for interviews on or before November 30, 1999, and the deadline to produce witnesses was subsequently extended at least twice. At least three of the Rule 5–604 petitions filed by the State seeking an extension of time to commence trial were required because the State had not produced its witnesses for interviews. Interviews of the State's witnesses were not completed until October 11, 2000.

{13} Defendant was accused of having sexual intercourse with his stepsister in a bedroom of his father's home while his father and the victim's mother were sleeping in an adjacent bedroom, and Defendant's sister was watching television in an adjacent living room. We agree with the prosecutor's statement during a hearing in December 1999 that, "[i]t's a two witnesses [sic] case. There's no one else in that room, other than the alleged victim and the Defendant and he's already interviewed [with] the lead detective. So, it shouldn't be a complicated case . . . ." The State's delay in producing its witnesses for defense interviews was unreasonable and cannot be condoned.

■ {14} After independently examining the record, we conclude that the following delays are attributable to Defendant: (1) from April 5, 1999, until April 12, 1999, when he failed to appear for arraignment on the first indictment; (2) from May 5, 2000, until June 12, 2000, when he failed to appear for

arraignment on the second indictment; (3) from January 2, 2001, until January 24, 2001, because he failed to appear at a hearing; and (4) from September 4, 2001, until October 23, 2001, by agreement. This accounts for 115 days out of 942 days that are directly attributable to Defendant. The remaining days of delay (827) were caused by the State's failure to produce its witnesses for interviews, the unavailability of the prosecutor for trial because of personal and professional reasons, staffing changes in the district attorney's office, and the trial court's docket. These different delays might be characterized in various ways as deliberate, negligent, or justified with different weights assigned to each. *See Zurla v. State*, 109 N.M. 640, 643, 789 P.2d 588, 591 (1990). However, we need not characterize each period of delay because, on balance, the State demonstrated an "unacceptable indifference" to its constitutional duty of bringing this case to trial within a reasonable time. *Id.* We agree with Judge Jewell that the reasons for the delay weigh against the State.

### 3. Defendant's Assertion of the Right to a Speedy Trial

{15} Judge Jewell found that Defendant always asserted his speedy trial rights and weighed this factor in Defendant's favor, although not heavily so because of delays in the trial proceedings that he agreed to. Defendant asserted his right to speedy trial when his counsel entered his appearance in April 1999. Defendant subsequently filed two motions to compel the State to produce its witnesses, objected to several of the State's Rule 5-604 petitions, and filed a motion to dismiss based on a violation of his right to speedy trial. We agree with Judge Jewell's findings on this factor.

### 4. Prejudice to Defendant

{16} Judge Jewell weighed this factor in favor of the State because she found no prejudice to Defendant in terms of the delay. We disagree.

{17} Our Supreme Court has stated that the Sixth Amendment was not intended, as commonly believed, solely to limit possibilities that delay would prevent, impair, or prejudice a defendant's ability to present a defense.

> Rather, major evils intended to be protected by the Sixth Amendment were to minimize interference that public arrest may cause with the defendant's liberty, whether he is free on bail or not, and to avoid disruption of his employment, curtailment of his associations, subjection of defendant to obloquy, and creation of anxiety in him, his family and his friends.

*Kilpatrick v. State*, 103 N.M. 52, 53, 702 P.2d 997, 998 (1985) (internal quotation marks and citation omitted).

{18} Defendant presented evidence of the stress he endured because of the pending charges. He testified, "I can't put my mind straight[,]" and he testified he was unable to sleep at times. Furthermore, he lived in the Bloomfield area, and traveling back and forth to the court in Albuquerque also caused him stress and anxiety.

{19} Defendant also suffered prejudice due to constraints on his liberty. When Defendant was first arraigned in April 12, 1999, he was booked into the Bernalillo County Detention Center and then released on his own recognizance, subject to conditions of release that: he was not allowed to leave Bernalillo County, he was required to make weekly contact with his attorney, he was required to keep his attorney informed of his whereabouts, he was required to keep his attorney informed of any changes in his home or work address, and he was prohibited from having any contact with any witnesses in the case. When Defendant was arraigned on the second indictment on June 12, 2000, he was ordered released to pretrial services supervision and the prior conditions of release were kept in effect. Conditions of release were again amended on May 22, 2001, when Defendant was ordered released to the third-party custody of an individual with the remaining conditions of release intact.

{20} Defendant clearly suffered the type of prejudice which the Sixth Amendment protects against. However, we need not decide in this case the degree of that prejudice because the first three factors, length of the delay, reasons for the delay,

and Defendant's assertion of the right to speedy trial all weigh in his favor. *See Salandre*, 111 N.M. at 431, 806 P.2d at 571 (holding that although prejudice was slight, on balance speedy trial violation took place); *Lujan*, 2003–NMCA–087, ¶ 29, 134 N.M. 24, 71 P.3d 1286 (finding a violation of speedy trial rights where three factors were squarely for the defendant even though fourth factor of prejudice was only minimal).

## CONCLUSION

{21}   The length of the delay in this case weighs heavily in favor of Defendant. The balance of the factors, reasons for the delay, Defendant's assertion of the right to a speedy trial, and prejudice to Defendant also weigh in Defendant's favor. The State has failed to overcome the presumption of prejudice which resulted from the unreasonable delay. Having independently evaluated the factors applicable to a Sixth Amendment speedy trial claim, we conclude that Defendant's constitutional right to a speedy trial was violated. We therefore reverse Defendant's conviction and remand the case with instructions to discharge Defendant.

{22}   IT IS SO ORDERED.

WE CONCUR: PICKARD and KENNEDY, JJ.