Certiorari Granted, June 2, 2010, No. 32,388
Certiorari Granted, June 24, 2010, No. 32,402

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-055**

**Filing Date: April 16, 2010**

**Docket No. 27,830**

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellant,**

**v.**

**CURTIS HARPER,**

  **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**J. Michael Kavanaugh, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Daniel M. Salazar
Albuquerque, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

**{1}** In this case, we are presented with another appeal from the consequences of the State's failure to abide by an order of the district court to complete witness interviews by a certain deadline. Following a motion hearing in which the defense sought witness interviews which had not occurred, the district court set a discovery deadline requiring that all witness interviews in the case against Curtis Harper (Defendant) be completed by January 19, 2007. We concern ourselves with two interviews: An interview with the alleged victim (SV) was

scheduled on the day of the deadline, but she was not under subpoena, and she failed to appear. Next, despite the district court's order, the State persisted in its refusal to schedule an interview with the State's expert witness, Dr. Renee Ornelas, because the defense had never made arrangements prior to the interview to pay her expert witness fees. The Monday following the missed deadline the State submitted a motion for an extension of time. Defendant responded with a motion opposing the extension and a motion to exclude SV and Dr. Ornelas as witnesses. Defendant's motion to exclude the witnesses' testimony was granted, from which the State appeals.

{2}     We first consider whether the district court abused its discretion in excluding SV given that the State scheduled her interview on the discovery deadline, and that approximately five months remained before the trial date, and conclude that reversal is in order. Our second inquiry is whether the State's expert was properly excluded where the district court had been fully apprised that the prosecution refused to schedule an interview until the defense affirmed it would pay witness fees, ordered that the interview be scheduled irrespective of the State's argument, and finally sanctioned the State when it intentionally disobeyed the district court's order. We reverse the district court as to the exclusion of SV's testimony and affirm as to the exclusion of Dr. Ornelas.

**BACKGROUND**

{3}     In November 2004 Defendant was indicted and arrested on fifteen counts of criminal sexual penetration of a minor in the first degree. Defendant remained incarcerated over two years while awaiting trial. From his indictment and arraignment in late 2004 until December 11, 2006, Defendant's trial date was pushed back multiple times through extensions granted under Rule 5-604(C) and (D) NMRA. Each request cited the need to finish discovery, "specifically any necessary [pretrial] interviews," as a basis for the extensions, among other things.

{4}     Some witnesses, including SV and Dr. Ornelas, had not been interviewed by the trial setting on December 11, 2006. At that setting, the defense requested of the district court a "date certain by which witnesses be made available, and then if they're not available or they show an unwillingness to cooperate, perhaps we can take it from there." The State made clear that Dr. Ornelas was an essential witness and her materiality to its case is undisputed. The State offered to set up the interview with SV at any time, but stated that it would not schedule an interview with Dr. Ornelas until payment of her expert witness fees was affirmed by the defense. The district court did not comment on the State's position, but simply imposed a deadline of January 19, 2007, to complete all witness interviews in preparation for trial. The court specifically stated, "if there's at least in the [d]efense's mind some continuing noncompliance, we'll—the [c]ourt will consider any motions that you have sometime after that and figure out if any remedy is necessary." At the time, trial was set for February 19. The State did not contest the order, or request that the district court attach any conditions to the scheduling of the interviews. At no time during this case did the State request a ruling as to whether its insistence on pre-payment of a witness fee was proper, nor did it request an order from the district court to either compel Defendant to pay such a fee or facilitate Defendant's right to payment of the expert witness fee. It did, however, file a

2

Rule 5-604 petition on December 13, alleging that "[t]he defense has still not obtained funding from the Public Defender's [O]ffice to interview the medical personnel that the State intends to call." On January 2, 2007, the extension was granted until March 24, 2007.

{5}     An interview was scheduled with SV on the January 19 deadline, but she failed to appear. An interview with Dr. Ornelas was never scheduled by the State. On January 22, 2007, the State filed a motion to extend the time to produce witnesses, asserting that "[t]he interview of [Dr. Ornelas] has never been set as it requires notification by defense that payment has been authorized." The defense responded with a motion to exclude the State's witnesses, and a motion opposing an extension to produce them, asserting that the State had declined to schedule Dr. Ornelas' interview despite having been ordered to do so on December 11 by the district court. The State responded on February 12 that it was under no inherent obligation to provide interviews, and that the defense, in the face of a witness' refusal should issue a notice of statement, or seek to depose the recalcitrant witness. Since SV had also failed to attend her interview, the State explained that SV was not subpoenaed because there was no reason to believe that she would not attend. The State also explained that it scheduled the interview with her on the deadline because it was the only day she was available and because it wanted to give Defendant time to consider a plea bargain. The State explained that it had a policy of withdrawing any potential plea bargain once a defendant interviewed a minor victim. It asserted again that the "defense has been informed many times that they must pay for [Dr. Ornelas'] interview and we would not set it until they had confirmed that the Public Defender['s Office] had approved payment." The State filed another Rule 5-604 petition with the Supreme Court on February 15, 2007, alleging a failure to arrange payment for Dr. Ornelas' interview as a reason for the failure to complete discovery, but did not mention the existence or terms of the January 19 deadline. This petition resulted in an extension of the trial deadline to June 24, 2007.

{6}     The district court set both motions for hearing at which it denied the State's requested extension and granted Defendant's motion to exclude based on the fact that the interviews had not been completed by the deadline. At the hearing, the State again asserted that Defendant had "no absolute right to an interview" and told the court that while it had been taken by surprise by SV's lack of cooperation, it had made no effort to schedule an interview with the expert because "Dr. Ornelas is a[n] expert witness. She won't give an interview until payment is arranged." Defense counsel pointed out that Defendant had been in custody for twenty-eight months up to that point and asserted the lack of contact with the two important witnesses and its impact on preparing a defense as prejudicial to his rights.

{7}     The district court stated that its "setting of a deadline was unambiguous." In support of its ruling, the court found that SV had not exhibited a willingness to cooperate. The State told the court that it would be their intention to proceed to trial even if SV stated in her interview that she remembered nothing. With regard to Dr. Ornelas, the district court stated from the bench, "[w]hether it's a reimbursement issue or a contractual issue or something else of that nature is certainly an issue that can be pursued, but to simply throw up a [roadblock] of refusing to participate . . . turns the system on its head[,] and this [c]ourt is not going to accept that that was proper." In its written order, the district court found that Dr. Ornelas was a "combination fact/expert witness" and that she could not "refuse an

interview to the defense based upon pay." The court further found that the defense's inability to interview these witnesses by the deadline prevented the defense from providing effective assistance, performing due diligence, and from adequately confronting the witnesses.

**{8}** The district court also had a motion to dismiss before it. The court postponed ruling on the motion to dismiss pending the outcome of this appeal.

**STANDARD OF REVIEW**

**{9}** "Sanctions for violations of discovery orders are discretionary with the [district] court." *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct. App. 1990). "[A]n abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances in the case." *State v. Jackson*, 2004-NMCA-057, ¶ 10, 135 N.M. 689, 92 P.3d 1263 (alteration in original) (internal quotation marks and citation omitted).

**{10}** The district court ruled that as a result of its missed deadline, defense counsel was prevented from providing effective assistance, performing due diligence, and adequately confronting witnesses. The district court ruling presents a mixed question of fact and law. *Id.* ¶ 18. We defer to the district court with respect to the finding of facts so long as they are supported by substantial evidence, but application of the law to those facts is reviewed de novo. *Id.*

**DISCUSSION**

**{11}** The State did not at the time and does not now contest the propriety of the district court's order setting the discovery deadline, but only the sanction imposed for its failure to abide by it. "[U]pon failure to obey a discovery order, the court may enter such order as is appropriate under the circumstances." *State v. Layne*, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707 (alteration in original) (internal quotation marks and citation omitted). We will not disturb a district court's order imposing sanctions absent an abuse of discretion. *State v. Ortiz*, 2009-NMCA-092, ¶ 35, 146 N.M. 873, 215 P.3d 811. As the Appellant, it is the State's burden to establish an abuse of discretion. *Layne*, 2008-NMCA-103, ¶ 10. Unless we can say that the district court's ruling was clearly untenable or unjustified by reason, we cannot say it abused its discretion. *Id.* ¶ 6.

**{12}** Exclusion is proper where there is culpability based on an intentional refusal to comply with an order and where such culpable conduct is prejudicial to the opposing party. In *Ortiz*, despite an order to produce personal cell phone records that the district court determined to be material to the preparation of the defense, the state persisted in refusing to comply with the order citing the police officer's privacy right. 2009-NMCA-092, ¶ 33. In *Layne*, the district court ordered production of records showing the ongoing relationship between the state and its informant, and the state violated a discovery order by refusing to disclose the information citing concerns about its confidential informant's safety. 2008-NMCA-103, ¶ 3. Similarly here, the State attempted to justify its noncompliance in producing a concededly "essential" witness of its for a pretrial interview asserting her right

4

to payment of expert fees. As a result, the district court excluded the informant as a witness. In *Ortiz*, we upheld the dismissal of the case with prejudice, and in *Layne*, we upheld the exclusion of the informant who was the only eyewitness to the crime. In both cases, we reasoned that the remedy was proper based on the state's intentional refusal and the resulting prejudice to the defense; in *Ortiz*, accounting for a police officer's actions during a six-minute gap in his police car's video of his interaction with the defendant, and in *Layne*, providing information in the state's possession that might be relevant to impeaching the informant as required under Rule 5-503(C) NMRA. Here, the order was to make SV and the State's "essential" expert witness, Dr. Ornelas, available by a certain date irrespective of the State's argument that the expert witness should receive a witness fee prior to the interview. As to SV, weak safeguards to ensure the presence of a witness whose recalcitrance is known does not rise to a refusal by the State to meet its obligation. It becomes a different matter when we evaluate the refusal to even schedule an interview with Dr. Ornelas.

{13}     After the deadline had expired, in its motion to extend time, and again in the March 2007 hearing, the State never asserted (nor do they assert now) that the order or deadline was beyond the district court's power or an abuse of discretion. Nor did it request any change or other relief from the order save an extension of time because the fees still needed to be paid. On appeal, they do not argue that the order compelling interviews was an abuse of discretion. We hold that this constitutes an abandonment of any objection to the district court's original order. *Mathis v. State*, 112 N.M. 744, 747, 819 P.2d 1302, 1305 (1991) (holding that failing to make a specific objection to the propriety of the ordered discovery at the time of its issue results in abandonment of the issue on appeal). In such a situation, we regard the district court's order as fully in effect, and the State's position to be no more than an irrelevant contrary preference that was unpursued. It is a strong foundation for our view that the State's ignoring the deadline was intentional and in disregard of any consequences to come from violating the order. In such a case, exclusion of Dr. Ornelas' testimony would be within the proper exercise of the district court's discretion.

**Exclusion of SV was Improper**

{14}     With regard to the missed interview with SV, any culpability on the part of the State with respect to her not appearing for an interview is minimal. The prosecution presented an arguably valid reason to have run the date for the interview with SV out to the deadline—postponing the drop-dead date for a plea offer. The State at no time refused to make SV available for an interview with the defense and it at least attempted to comply with the court's discovery order by scheduling an interview with SV before the deadline.[1] SV was contacted personally to set the interview date and received a reminder the day previous to the interview to attend. After SV failed to appear, the State expressed a willingness to reschedule, this time under subpoena. This attention paid by the State and its willingness to reschedule mollifies the culpability that may be allocated to the State, rendering it much

---

[1]Granted, the State was aware that SV was not the most willing of witnesses and had been approached by her aunt and asked not to give a statement against Defendant; a careful prosecutor might at that point have investigated the extent of the aunt's likely influence or issued a subpoena just to be safe.

less than that which justified exclusion in *Layne* or *Ortiz*.

**{15}** This does not mean that we ignore the State's taking no action, save requesting extensions, between the expiration of the deadline and the motion hearing two months later. The State had obtained an extension of the trial date to March 24, 2007, had submitted a request for an extension of the discovery deadline on January 22, and yet filed another request for extension of the trial date to the Supreme Court on February 15 without disclosing the court's order. The trial deadline was again extended on February 28 to June 24. The hearing on exclusion occurred on March 29. Although the State ran scheduling of the interview up to the deadline, several months yet remained before the trial deadline to eventually reschedule the interview and prepare for trial.

**{16}** At the hearing on exclusion, defense counsel pointed to Defendant's preceding twenty-eight months' incarceration as the number one sign of prejudice. The speedy trial issue was discussed at the March 2007 hearing and reserved for later hearing. Defense counsel also pointed out that SV's memory may have faded and that the delay was thus prejudicial. However, absent any evidence in support of this assertion, the statement itself is insufficient to show prejudice. *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701 (stating that prejudice must be more than speculative); *see Jackson*, 2004-NMCA-057, ¶ 19 (holding that an allegation that memories fade with the passage of time did not justify dismissal in a delayed discovery case). Furthermore, SV had given a safe house interview, thus making it ultimately possible at trial to compare any changes or discrepancies in her testimony against prior statements. Therefore, even allocating some level of culpability to the State, we hold that the prejudice demonstrated by Defendant was insufficient to warrant exclusion as to SV. Despite the delay in bringing SV to an interview, which was related to the State's policy of plea offers expiring upon the interview of child victims, Defendant's incarceration was more related to serial appointment of defense counsel and delay of other witness interviews, than the failure of any interview with SV. Absent a refusal to disclose by the State, nothing suggests that defense counsel was prevented by the State from effectively preparing for an eventual June trial deadline with regard to interviewing SV. *Id.* ¶ 19. In the absence of any intentional withholding by the State of access to SV for an interview, and the tenuous relationship between the interview and delaying trial, we hold that SV's testimony should not have been excluded by the district court.

**Exclusion of Dr. Ornelas For Violating the Court's Order Was Proper**

**{17}** Resolving the issue as to SV's interview reflects the State's acting to comply with the court's order. With regard to the portion of the district court's order to make Dr. Ornelas available for an interview, the State's conduct stands in great contrast, as the State refused to comply with the district court's order and to schedule an interview.

**{18}** The State argues on appeal that Dr. Ornelas was entitled to a witness fee, that Defendant was entitled to funds to pay for interviewing expert witnesses, that the district court somehow failed to ascertain whether Defendant had attempted to receive such funds, and that Defendant's failure to independently seek Dr. Ornelas' interview has resulted in the

6

State's being unfairly punished for the defense's inaction. The State never objected to the district court's order as improperly compelling an interview without the fees being paid. Never did it request a ruling from the district court concerning the propriety of a witness fee for a pretrial witness interview. It requested no order to assist in obtaining or compelling the payment of Dr. Ornelas' witness fees in any way. We previously held that the State failed to preserve the issue for our review. *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) (stating appellant must specifically apprise trial court of claimed error and invoke intelligent ruling thereon in order to preserve issue for appellate review). These issues are not properly before us for consideration, nor properly addressed in the dissent.

**{19}** The issue is that for more than two years, the State *refused* to make a witness available for an interview and maintained its refusal despite a court's order to the contrary. The district court voiced its similar disdain for the State's excuse after it had violated the court's order, stating that once the State violated the court order the issue was no longer the witness fee, but that in light of the State simply throwing "up a roadblock of refusing to participate," such action "turns the system on its head and this [c]ourt is not going to accept that that was proper." It is in this context that the district court then found the impairment to Defendant's case. Once the order was intentionally disobeyed, the district court was entitled to fashion the remedy it saw fit under the circumstances.

**The Court's Order, Once Issued, Mooted the State's Objection Absent Further Proceedings**

**{20}** The order was, in the words of the district court, "unambiguous." Its entry followed a hearing in which Defendant had asserted a failure to make Dr. Ornelas available for an interview. The State clearly enunciated at that time its decision to not schedule the interview until the fees were paid. The district court addressed Defendant's assertion of the State's wilful failure to provide interviews in this regard by stating that further matters of noncompliance could be raised at a later date if the interview was not accomplished. At that point, we consider the State's argument ignored, if not rejected by the district court; the State acquired a duty to follow the order. *Mathis*, 112 N.M. at 747, 819 P.2d at 1305 ("[I]f the court has previously ordered it disclosed further objection to its disclosure is moot and it must be produced") (internal quotation marks and citation omitted); *United States v. Opager*, 589 F.2d 799, 805 (5th Cir. 1979) (holding that once the court's order is entered, government's objection to disclosure is moot). It is this total lack of effort to draw the district court's attention to the cause of the State's refusal by way of either seeking a remedy for the position the order put it in, or a modification of the order to address payment. The second is its refusal in the face of the court's order that is the root of the State's problem.

**Rule 5-503 Unconditionally Requires the Giving of Pretrial Statements by Any Witness at the Request of a Party**

**{21}** We begin with a general proposition, as expressed in Rule 5-503(A), "[a]ny person, other than the defendant, with information which is subject to discovery shall give a statement." There is no dispute in this case that Dr. Ornelas was an "essential" witness who would be called by the State and that her statement would be of great importance to

7

preparing the defense in this case. Rule 5-503(C) allows a criminal defendant to "obtain discovery regarding any matter, not privileged, which is relevant to the offense charged or the defense of the accused person," without regard to its admissibility at trial, so long as the "information sought appears [to be] reasonably calculated to lead to the discovery of admissible evidence." *Id.* This rule approaches the liberal civil discovery standard in its breadth. *See* Mary Prosser, *Reforming Criminal Discovery: Why Old Objections Must Yield To New Realities*, 2006 Wis. L. Rev. 541, 581 (contrasting old standards of discovery with liberal civil rules). Obtaining discovery under this liberal rule includes obtaining the required statement from the witness. There is no provision in the rule subjecting this cooperation to preconditions. The committee commentary to Rule 5-503 is explicit that "Paragraph A . . . requires witnesses to cooperate in the giving of a statement. A witness may not refuse to give a statement because defense counsel or the prosecuting attorney may not be able to be present during the taking of the statement." Dr. Ornelas was in any case obligated to give a statement under Rule 5-503; the witness interview ordered by the court was the vehicle to accomplish that end.

**The State, Having Undertaken To Provide Witness Interviews, Must Follow Through**

**{22}** In a criminal case, there are three levels of pretrial investigative contacts with witnesses to obtain statements. In order of procedural involvement, they are: (1) informal contacts and interviews conducted outside the Rules of Criminal Procedure; (2) statements taken pursuant to the rules; and (3) depositions. *See* Rule 5-503. The Rules of Criminal Procedure command the state to identify its witnesses to the defense and turn over any statements made by those witnesses to the defense. Rule 5-501(A)(5) NMRA. Often, as the State pled in this case, "the State . . . [aids] in setting up these interviews for the convenience of the parties, as well as for the convenience and protection of the witness, particularly in child abuse prosecutions." This description falls short of the reality, however, because the State's "aid" must generally be requested, and the State then notifies the witnesses to appear for interviews. This process is more than just a courtesy and has acquired more formality than the State indicates here. In the past, we have declined to let the State off the hook when it undertakes this responsibility and fails to follow through; and we have generally held that such a failure constitutes a collapse of the State's duty to progress a case to trial. *State v. Johnson*, 2007-NMCA-107, ¶ 15, 142 N.M. 377, 165 P.3d 1153 (holding that refusal to schedule requested interviews counts against the state in speedy trial calculation); *State v. Talamante*, 2003-NMCA-135, ¶ 13, 134 N.M. 539, 80 P.3d 476 (holding that an excessive delay in the state's "producing its witnesses for defense interviews was unreasonable and cannot be condoned"). What is more, by setting interviews with its witnesses at which its own representatives are present, the State benefits by observing the questions put to its witnesses, hearing their answers, and having them present to clarify any questions the State may have about the evidence. This system, by which the State undertakes to control when witnesses are scheduled to meet with the defense, offers the State a measure of control and benefit it would not otherwise enjoy if the defense sought interviews on its own, without regard for the "convenience of the *parties*."

**{23}** The "right of defendants to interview witnesses without prosecutorial interference is grounded in the constitutional guarantee of due process and notions of elemental fairness."

8

*State v. Guzman*, 71 P.3d 468, 470 (Idaho Ct. App. 2003) (internal quotation marks and citation omitted). Our Supreme Court adopted the holding in *State v. Orona*, 92 N.M. 450, 452, 589 P.2d 1041, 1043 (1979) (holding that witnesses "to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them") (internal quotation marks and citation omitted). In *Orona*, the district court's order prohibiting defense access to witnesses was held to be an impediment to the defendant's right to due process, and the Supreme Court held that "there was unquestionably a suppression of the means by which the defense could obtain evidence." *Id.* (internal quotation marks and citation omitted). It should be no different when the district court imposes an obligation to make an essential witness available to the defense for a pretrial interview. Returning to the State's contention that it takes on the responsibility of setting up interviews "for the convenience of the parties, as well as for the convenience and protection of the witness, particularly in child abuse prosecutions," this protection does not extend to allowing any impediment to the interviews of a victim by counsel. *Id.* at 453, 589 P.2d at 1044. It should be less so with regard to the medical expert who examined and evaluated the victim after the trial. In *Guzman*, the informant/witness refused to speak with the defense prior to trial having been told by the prosecutor that he did not have to talk to the defense at all; no prosecutorial overreaching was found. 71 P.3d at 470. In this case, the impediment to a witness interview was the State's refusal to honor the district court's order to make the witness available. The due process interest is undiminished, but in this case, the State is directly prohibiting the interview despite a court order to the contrary.

**{24}** No witness list containing Dr. Ornelas' name appears in the record before us; there is no affirmative indication in the record that Dr. Ornelas herself insisted upon up-front payment save the assertions of the prosecutor. *Ortiz v. Shaw*, 2008-NMCA-136, ¶ 20, 145 N.M. 58, 193 P.3d 605 ("Generally, statements of counsel are not evidence."). The order prepared by the State excluding the witness' testimony, however, found that "[t]he parties were aware that Dr. Ornelas would only give the interview after receiving payment even on fact issues[,]" and we accept the fact that the non-payment of fees was what derailed her interview. However, either on her own behalf, or through the State whose witness she was, the Rules of Criminal Procedure provide the witness an opportunity to petition the court for redress of any untoward consequences that may arise as a result of being required to give a statement or deposition. Rule 5-507 NMRA. From the record, the State's expert witness had no discernable need for protection.[2] There is also a provision in the rules for a party or a witness to claim and seek relief for any undue burden that might result from being required to give a statement but such relief must be sought of the court. Rule 5-503(G) and Rule 5-507. Presumably, if a witness wishes to receive payment for his or her time, either on a per diem or hourly basis, that witness may ask the court for reimbursement. None of these provisions were invoked, however, and none apply in the face of the district court's order with which we are concerned. Even if Dr. Ornelas herself had refused to comply with the district court's order based on her fee, we reject this as an adequate basis for the State's

---

[2]A cursory Westlaw survey also reveals that Dr. Ornelas has been a witness in cases that have resulted in close to a dozen published state and federal opinions since 1996, all involving cases of child welfare and abuse. She is no stranger to the judicial system.

noncompliance with the district court's order absent further action by it to obtain further relief from the court based specifically on the need for payment, which it never sought.

{25} The concern was raised in the hearing to compel interviews and apparently rejected by the district court as it entered its order. The State was therefore unjustified in pursuing its "policy" once the interview was ordered. We have previously held that a witness not under court order or other legal process may refuse an interview and enjoys the right to dictate the terms of any interviews with defense counsel. *State v. Williams*, 91 N.M. 795, 799, 581 P.2d 1290, 1294 (Ct. App. 1978). However, in *Williams*, we also clearly stated that to the extent a witness' desires interfere with a court order, questions concerning the witness' or parties' desires evaporate. *Id.*

{26} Very little difference exists therefore between this case and *Ortiz*, 2009-NMCA-092, ¶ 24, where we made it plain that we accord great deference to an order of the district court. There, as here, the order was unambiguous, in place, and the state intentionally refused to comply. We held there that where the state failed to invoke a ruling on the court's order on the basis that the evidence was outside the court's purview to order discovery, the issue was not preserved for appeal. *Id.* ¶ 32. Here, the State has consistently chosen to eschew the question of whether the district court had the power to order that the State arrange an interview with Dr. Ornelas irrespective of any expert witness fee. There, as here, the state had adhered to a position that for reasons of its own, and irrespective of an order of the court, it would not provide access to discovery.

{27} We have seen hints previously that the Second Judicial District Attorney's Office restricts access to its experts until payment is arranged. *See, e.g.*, *State v. Schoonmaker*, 2008-NMSC-010, ¶ 7, 143 N.M. 373, 176 P.3d 1105 ("[D]efense counsel . . . testified that the [s]tate had demanded payment for the [s]tate's physician experts if the defense wanted to interview them."). There, because of the district court's refusal to grant withdrawal of counsel so the defendant could have access to his own experts (and implicitly the state's) for an interview, the Supreme Court found ineffective assistance and reversed. *See State v. Brown*, 2006-NMSC-023, ¶ 16, 139 N.M. 466, 134 P.3d 753; *see also Schoonmaker*, 2008-NMSC-010, ¶ 36 (failure to interview prosecution experts may be ineffective assistance). *Schoonmaker* left unanswered, however, whether the state could use expert witness fees to impede access to witness interviews, a question of first impression that we answer here in the negative, since mechanisms exist to deal with the problem outside of a prosecutor acting as a preemptive guarantor of the fee.

**No Discernable Basis Exists to Allow the State to Deny Access to a Witness Based on Defendant's Failure to Pay an Expert Witness Fee**

{28} There is no provision in the Rules of Criminal Procedure requiring the pre-payment of fees to an expert witness not subpoenaed. Those rules do not allow a district attorney's office to, in the words of the court below, "hold hostage" a witness interview by unilaterally acting as the guarantor of witness fees.

{29} Such a prosecutor's office, which refuses to make a witness available when ordered

10

to do so by the court, may expect to see its case suffer the consequences of disobedience. Here, as in *Ortiz*, 2009-NMCA-092, the State stood on its refusal and took no further action with regard to the court's order. As *Ortiz*, *Schoonmaker*, and other cases demonstrate, this Court should concern itself with clarifying the law governing how district attorney's offices should conduct themselves when making witnesses available for interviews. The State conceded that it attempted to control the nature of access to witnesses for its own benefit as well as the mutual convenience of all parties. But the State cannot assert itself as the source of access to its witnesses and thereafter argue that its refusal to do so does not arise from any "legal" obligation to do so. Instead, the State's obligation is to do what it promises to do and schedule the interviews. This becomes all the more imperative when memorialized in an order of the court.

**{30}** As the State points out, the defense never sought a statement under Rule 5-503. At the point the district court ordered the interview to take place by January 19, 2007, though, such an argument disappeared. The State was then under judicial order to schedule the interview with Dr. Ornelas, and the defense had no further obligation to seek an interview by other methods. In *Ortiz*, we rejected the state's position that the district court should have ordered the defense to seek by subpoena the evidence the state later argued it was wrongly ordered to produce. 2009-NMCA-092, ¶¶ 33-34. We hold similarly in this case. In the absence of any assertion by the State that the court had no power to order an interview irrespective of the defense paying a witness fee, the district court's order requiring the State to arrange the interview must prevail.

**The District Court Properly Sanctioned the State for Disobeying its Order**

**{31}** From Defendant's indictment and arraignment in late 2004 until December 11, 2006, Defendant's trial date was extended four times. In each petition to extend, the State alleged that "necessary" witness interviews had not been completed. At the trial setting on December 11, 2006, the State informed the district court that it would not schedule Dr. Ornelas' interview until the defense had first arranged payment of her fees. Likewise, on that date the defense requested a "date certain by which witnesses be made available, and then if they're not available or they show an unwillingness to cooperate, perhaps we can take it from there." The State asserted that "[Dr. Ornelas has] never been attempted because we've got to get payment set up before that can be done." The State made clear that Dr. Ornelas was an essential witness and her materiality is undisputed.

**{32}** The district court set trial for February 19, 2007, and instructed the parties that interviews were to be completed by January 19. The court specifically stated, "if there's at least in the [d]efense's mind some continuing noncompliance, we'll—the [c]ourt will consider any motions that you have sometime after that and figure out if any remedy is necessary." The order was thus clear and unequivocal: having been asked by the defense to assist in setting interviews, the State was ordered to set the interviews, or the court would entertain further remedies. Two days later, the State filed another request for a rule extension asserting the defense's failure to pay for the witness. However, the State never requested any assistance with payment from either the district court or the Supreme Court, nor did it request any other relief from having to schedule the interview. In this regard, we

11

believe the State waived any objection to the district court's order to make the witness available for an interview. *Id.* ¶ 32 (holding that where the state did not litigate its objection to a discovery order, the argument was waived). Accordingly, we believe that the State is incorrect in relying upon any theory of waiver on the part of the defense.

**{33}** *Ortiz* also analyzed the issue of waiver. In that case, the state refused to obey an order of the district court to turn over documents to the defense. The state argued, as in the instant case, that the defendant bore an independent responsibility to seek the evidence. This Court held, first, that the state improperly attempted to place the burden on the defense to seek what it had already requested. *Id.* ¶ 34. Second, this Court upheld the right of the lower court to impose a most extreme sanction, noting that the state never sought protection from the court's order. *Id.* ¶ 36. We also noted that there, as here, the state changed its position on discovery. *Id.* ¶ 38. Indeed, in this case, the State went from an original refusal based solely on non-payment to a more general assertion that providing interviews is not its responsibility in the first place. In *Ortiz*, as here, the state "approached the issue . . . as one of policy—a firm stand that the [s]tate" would not change. *Id.* In that case, we affirmed the district court's sanction of dismissal based on its conclusion that the state acted in bad faith. *Id.* ¶ 39. Likewise in this case, the district court concluded that the State had held the defense hostage with the imposition of the witness fee in intentional violation of its unambiguous order, and we should affirm that decision. The exclusion of a material witness, whose interviews have been intentionally prevented in direct contravention of a court order, is a much lesser sanction than the one countenanced in *Ortiz*.

**{34}** With respect to whether or not Defendant was prejudiced by the missed interview deadline, we apply the same considerations from our analysis of the exclusion of SV. Defendant potentially had access to expert witness funds through the Public Defender Department, the district court could have intervened to help secure such funds, the trial deadline had been extended to June, and there were other less severe options to address Defendant's prolonged incarceration. Again, other than the mere occurrence of delay, and given that the defense could have attempted to compel the interview itself or obtain funding, pursuant to *Jackson*, no actual evidence suggests that defense counsel was prevented from effectively preparing for a June trial deadline. For these reasons, we conclude that any prejudice to Defendant resulting from the missed deadline was minimal and did not justify exclusion.

**CONCLUSION**

**{35}** For the foregoing reasons, we affirm in part and reverse in part the decision of the district court and remand for further proceedings pursuant to this opinion.

**{36}  IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

12

ROBERT E. ROBLES, Judge

**MICHAEL D. BUSTAMANTE, Judge (specially concurring in part and dissenting in part)**

**BUSTAMANTE, Judge (specially concurring in part and dissenting in part)**

**{37}**    I concur in the result of the majority opinion with regard to SV.  I dissent from the majority's resolution of the issue concerning Dr. Ornelas.  Were I in the majority as author, I would resolve the case in an opinion constructed as follows:

**{38}**    "The district court set a discovery deadline requiring that all witness interviews in the case against Curtis Harper (Defendant) be completed by Friday, January 19, 2007.  An interview with the alleged victim, SV, was scheduled for the day of the deadline, but she was not under subpoena and she failed to appear.  An interview with the State's expert witness, Dr. Ornelas, was never scheduled ostensibly because the State had not been provided with assurances that her expert witness fees would be paid.  The Monday following the missed deadline the State submitted a motion for an extension of time.  Defendant responded with a motion opposing the extension and a motion to exclude SV and Dr. Ornelas as witnesses.  Defendant's motion to exclude was ultimately granted, and the State appeals.

**{39}**    We first consider whether the district court abused its discretion in excluding SV given that the State scheduled her interview on the discovery deadline and that approximately five months remained before the trial date.  Our second inquiry is whether the State's expert was properly excluded where the defense failed to affirm that it would pay witness fees, the prosecution refused to schedule an interview until the defense affirmed it would pay the fees, and the district court did not intervene.  We reverse and remand concluding that exclusion of the witnesses under these circumstances was an abuse of discretion.

**BACKGROUND**

**{40}**    In November 2004 Defendant was indicted and arrested on fifteen counts of criminal sexual penetration of a minor in the first degree.  Defendant remained incarcerated for nearly three years while awaiting trial.  Defendant's trial date was scheduled multiple times through extensions granted under Rule 5-604(C) and (D) NMRA.  Each request cited as a basis for the extensions, among other things, the need to finish discovery, "specifically any necessary [pretrial] interviews."  The last extension occurred on February 28, 2007, and resulted in a trial deadline of June 24, 2007.

**{41}**    In December 2006 the district court imposed a deadline of January 19, 2007, to complete all witness interviews in preparation for trial.  At the time, trial was set for February 19.  The State offered to set up the interview with SV at any time, but stated that

13

it would not schedule an interview with Dr. Ornelas until payment of her expert witness fees was affirmed by the defense. An interview was scheduled with SV on the Friday, January 19 deadline, but she failed to appear. An interview with Dr. Ornelas was never scheduled.

**{42}** In its motion for an extension of time to complete witness interviews, the State explained that SV was not subpoenaed because there was no reason to believe that she would not attend. The State also explained that it scheduled the interview with her on the deadline because it was the only day she was available, and because it wanted to give Defendant time to consider a plea bargain. The State asserted that it had a policy of withdrawing any potential plea bargain once a defendant interviewed a minor victim. With respect to Dr. Ornelas, the State explained that it never set up the interview because the defense failed to confirm that it would pay her expert witness fees.

**{43}** Defendant opposed the State's request for an extension of time and requested that both witnesses be excluded. The district court denied the State's requested extension and granted Defendant's motion to exclude based on the fact that the interviews had not been completed by the deadline. In support of its ruling, the court found that SV had not exhibited a willingness to cooperate. With regard to Dr. Ornelas, the district court found that she was a "combination fact/expert witness" and that she could not "refuse an interview to the defense based upon pay." The court also found that the defense's inability to interview these witnesses by the deadline prevented the defense from providing effective assistance, performing due diligence, and from adequately confronting the witnesses.

**{44}** The district court also had a motion to dismiss before it. The court postponed ruling on the motion to dismiss pending the outcome of this appeal. However, the State conceded that dismissal would be proper if this Court were to affirm the exclusion of its two key witnesses, or that it would not continue to prosecute.

**STANDARD OF REVIEW**

**{45}** "Sanctions for violations of discovery orders are discretionary with the trial court." *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct. App. 1990). "[A]n abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances in the case." *State v. Jackson*, 2004-NMCA-057, ¶ 10, 135 N.M. 689, 92 P.3d 1263 (alteration in original) (internal quotation marks and citation omitted). Exclusion of SV and Dr. Ornelas would effectively result in dismissal of the case against Defendant. Dismissal is a severe sanction appropriate only in the rarest of cases. *Bartlett*, 109 N.M. at 682, 789 P.2d at 630.

**{46}** The district court ruled that as a result of the missed deadline, defense counsel was prevented from providing effective assistance, performing due diligence, and adequately confronting witnesses. The district court's ruling presents a mixed question of fact and law. *Jackson*, 2004-NMCA-057, ¶ 18. We defer to the trial court with respect to the finding of facts so long as they are supported by substantial evidence, but application of the law to those facts is reviewed de novo. *Id.*

14

**DISCUSSION**

**{47}** "[U]pon failure to obey a discovery order, the court may enter such order as is appropriate under the circumstances." *State v. Layne*, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707 (alteration in original) (internal quotation marks and citation omitted). However, "[a] defendant is not entitled to a dismissal or other sanctions upon a mere showing of violation of a discovery order." *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. Our Supreme Court has held in the analogous area of exclusion of evidence that whether or not a sanction should be imposed "depends in large measure upon the extent of the Government's culpability . . . weighed against the amount of prejudice to the defense." *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981) (internal quotation marks and citation omitted). In order to justify exclusion, a "defendant must establish prejudice resulting from the violation." *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. "The prejudice must be more than speculative." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701.

**{48}** Exclusion is proper where there is culpability based on an intentional refusal to comply with an order, and where such culpable conduct is highly prejudicial to the opposing party. In *Layne*, for example, the state refused to disclose information about its confidential informant in violation of a discovery order. 2008-NMCA-103, ¶ 3. As a result, the district court excluded the informant as a witness. *Id.* ¶ 1. Under those facts, exclusion was proper given the state's wilful refusal to comply with the order, and because the non-disclosure prevented the defense from discovering potentially impeaching evidence. *Id.* ¶ 13. We reasoned that impeachment is crucial to effective cross-examination, and cross-examination is part of the constitutional right to confront witnesses. *Id.* Thus, exclusion was proper based on the state's intentional refusal and the resulting prejudice to the defense.

**{49}** Exclusion is normally improper where a party may be charged with some amount of culpability but the resulting prejudice is minimal. In *Bartlett*, the district court dismissed a case against a defendant where the state failed to produce a video tape of an interview with one of its witnesses. 109 N.M. at 680, 789 P.2d at 628. The circumstances leading to loss of the tape were murky and the trial court in *Bartlett* did not determine the degree of fault attributable to the state for the loss. For purposes of analysis, we presumed "some degree of deliberate fault on the part of the state was present." *Id.* at 681, 789 P.2d at 629. Nonetheless, we concluded that dismissal was improper because the defense was able to vigorously raise and pursue defenses relating to the video tape even without it being produced, and thus any prejudice was minimal. *Id.* at 682, 789 P.2d at 630.

**{50}** In cases of delayed disclosure, prejudice is shown if the delay prevented a party from preparing for trial. In *Jackson*, the district court dismissed a case against a criminal defendant based on delays in discovery. 2004-NMCA-057, ¶ 18. There, we noted the difference between cases dealing with delayed disclosure versus those dealing with non-disclosure and stated that, for the prior, "the test is whether [the] defendant's counsel was prevented by the delay from using the . . . material effectively in preparing . . . the defendant's case." *Id.* ¶ 19 (second alteration in original) (internal quotation marks and citation omitted).

15

**Exclusion of SV was Improper**

**{51}**   Here, any culpability on the part of the State with respect to the failed SV interview is minimal.  The State at no time refused to make SV available for an interview with the defense, and it at least attempted to comply with the court's discovery order by scheduling an interview with SV before the deadline.  After SV failed to appear, the State expressed a willingness to reschedule, this time under subpoena.  Any culpability that may be allocated to the State is far less than that which justified exclusion in *Layne*.

**{52}**   Furthermore, any prejudice to Defendant was minimal given that the time frame for trial deadline had been extended.  The State submitted its request for an extension of the discovery deadline on January 22, the hearing on exclusion occurred on March 29, and the ultimate trial deadline was extended to June 24.  Several months remained before the trial deadline to reschedule the interview and prepare for trial.  Other than the delay, and absent a refusal to disclose by the State, nothing suggests that defense counsel was prevented from effectively preparing for a June trial deadline.  *Jackson*, 2004-NMCA-057, ¶ 19.

**{53}**   At the hearing, defense counsel pointed to Defendant's incarceration as the number one sign of prejudice.  However, exclusion—or effective dismissal—was a severe sanction where there were other options for addressing the issue of prolonged incarceration, including the one later taken by the court:  reevaluating terms of release, and release on bond.

**{54}**   Defense counsel also pointed out that the witness' memory may have faded, and that the delay was thus prejudicial.  However, absent any evidence in support of this assertion, the statement itself is insufficient to show prejudice.  *See McDaniel*, 2004-NMCA-022, ¶ 6 (stating that prejudice must be more than speculative); *see also Jackson*, 2004-NMCA-057, ¶ 19 (holding that an allegation that memories fade with passage of time did not justify dismissal in a delayed discovery case).  Furthermore, SV had been interviewed on a prior occasion, thus making it possible to compare any changes or discrepancies in her testimony against her prior statements.  Therefore, even allocating some level of culpability to the State, any resulting prejudice was insufficient to warrant exclusion.

**Exclusion of Dr. Ornelas was Improper**

**{55}**   The State and defense counsel share culpability for the failed interview with Dr. Ornelas.  The State openly refused to schedule an interview with Dr. Ornelas until such time that the defense affirmed payment.  Such an open refusal to comply with the court's discovery order is clearly analogous to *Layne*, where the State refused to provide information on its informant.  2008-NMCA-103, ¶ 3.

**{56}**   However, we cannot overlook the fact that, even after having notice of the State's position, the defense posed no objection to payment of Dr. Ornelas' fees until after the deadline expired.  Unlike the defense in *Layne*, defense counsel in this case had options available to compel discovery within the court's deadline.  For example, defense counsel acknowledged he could have subpoenaed the witness, but declined based on his understanding that scheduling was an obligation of the State.  This understanding does not

16

excuse defense counsel's failure to act given the State's position that it would not schedule anything absent agreement as to the expert witness fees.

**{57}** Defense counsel could have requested that the Public Defender Department pay Dr. Ornelas' expert witness fees. An indigent defendant is entitled to obtain funding for expert witness fees. *Brown*, 2006-NMSC-023, ¶ 31. Access to these funds is part of an indigent defendant's Sixth Amendment right to "the basic tools of an adequate defense." *Id*. ¶¶ 16, 25. As a contract public defender, defense counsel in this case could have applied for such funding for Dr. Ornelas' fees. *Id.* ¶ 28. Whether the defense would have received funding is, of course, unknown. But as we understand the record, the defense never requested it.

**{58}** This case highlights the advantages and disadvantages attached to the practice in the Second Judicial District—and perhaps others—of having the district attorney provide and yet control access to the State's witnesses. The practice can be convenient for the defense and utilitarian for the State when it operates smoothly. When it does not, however, the practice creates difficulties for all parties, but particularly for the trial courts when they are called on to sort out the cause of the failure—which it must do in order to decide what its response should be. When the parties know they are at loggerheads—as they were with regard to Dr. Ornelas—the practice cannot be relied upon by anyone. The defense can and should resort to the formal discovery methods provided for in the Rules of Criminal Procedure. Resort to the rules here would have created an opportunity for all parties and Dr. Ornelas to openly litigate the question of fees for experts in these circumstances, including whether, when, and how they were to be paid. This Court would then have a proper record to assess rather than the vague morass of he said/she said assertions we are dealing with.

**{59}** Finally, the district court should have considered its role in securing Dr. Ornelas' expert witness fees. Where funding has not been secured or made available to pay expert witness fees for indigent defendants, the court as the "ultimate guardians of an indigent defendant's . . . rights," may take action to obtain the necessary funding. *Id.* ¶ 23. The district court was put on notice that Dr. Ornelas' expert witness fee was an issue at the time it ordered the discovery deadline. However, it took no action to fulfill its obligation of protecting Defendant's rights by addressing the funding issue before resorting to exclusion of the witness.

**{60}** We agree with the district court that the State could not refuse to schedule an interview with its expert based on payment. However, we cannot agree that exclusion was justified where the defense failed to raise the issue of funding before the discovery deadline and apparently failed to seek funding, and where the court itself failed to intervene. Exclusion of a witness which will ultimately result in dismissal "punishes the public, not the prosecutor, and results in a windfall to the defendant." *Jackson*, 2004-NMCA-057, ¶ 15 (internal quotation marks and citation omitted). Therefore, exclusion of Dr. Ornelas based on the State's conduct was an abuse of discretion when viewed in light of all the surrounding circumstances.

**{61}** With respect to whether or not Defendant was prejudiced by the missed interview deadline, we apply the same considerations from our analysis of the exclusion of SV.

17

Defendant potentially had access to expert witness funds through the Public Defender Department, the district court could have intervened to help secure such funds, the trial deadline had been extended to June, and there were other less severe options to address Defendant's prolonged incarceration. Again, other than the mere occurrence of delay, and given that the defense could have attempted to compel the interview itself or obtain funding, pursuant to *Jackson*, no actual evidence suggests that defense counsel was prevented from effectively preparing for a June trial deadline. For these reasons, we conclude that any prejudice to Defendant resulting from the missed deadline was minimal and did not justify exclusion."

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *State v. Harper*, Docket No. 27,830**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-RM | Remand |
| AE-SR | Standard of Review |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-DD | Deposition and Discovery |
| CA-EX | Expert Witness |
| CA-MR | Motion to Suppress |

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-CP | Criminal Sexual Penetration |

| **EV** | **EVIDENCE** |
|---|---|
| EV-DP | Deposition |
| EV-EE | Exclusion of Evidence |
| EV-EW | Expert Witness |
| EV-SU | Suppression of Evidence |
| EV-WT | Witnesses |